IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CERTAINTEED CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. Action No. 02-2677 |
| v. | ) | |
| | ) | Hon. William H. Yohn |
| BOISE CASCADE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

# ORDER

It is hereby ORDERED that Plaintiff's Motion To Preclude The Expert Report And Proposed Testimony Of Tony Spaeth is GRANTED and Defendant is precluded from offering at trial, referring to, or relying upon the report of Mr. Spaeth or the testimony of Mr. Spaeth.

BY THE COURT:

_____
YOHN, J.

Dated this _____ day of _____ 2003.

PHL_A #1748350 v1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CERTAINTEED CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOISE CASCADE CORPORATION, ) <br> ) <br> Defendant. ) | Civ. Action No. 02-2677 <br><br> Hon. William H. Yohn |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO MOTION TO PRECLUDE THE PROPOSED TESTIMONY AND EXPERT REPORT OF TONY SPAETH

In this trademark infringement action involving Defendant's infringement of Plaintiff's "BUILDING SOLUTIONS" trademark, Defendant has offered Mr. Tony Spaeth as a "corporate identity" expert to purportedly "explain that the term 'solutions' has become a common term to communicate that a company offers more than products." Def.'s Opp'n to Pl.'s Mot. to Preclude Proposed Testimony and Expert Rept. of Greg Brooks, Michael Stepnowski and Tony Spaeth at 10 ("Opposition," filed May 22, 2003).

Plaintiff's Motion to Preclude more than adequately establishes why the proposed testimony and report of Mr. Spaeth should be excluded. However, the inaccuracies in the Opposition require a response setting forth a brief, correct statement of the law: alleged third-party listings, or alleged "common" uses, of a term are completely irrelevant absent any evidence of the nature and extent of such alleged third-party use of a mark.

**A. Dealing With the Significance of the Term "Solutions"**

To be admissible, the proponent of expert testimony has the burden of establishing that the testimony offered will assist the trier of fact to understand the <u>evidence</u> or to determine a <u>fact</u>

in issue; <u>and</u> the proposed testimony is not merely based on subjective belief or unsupported speculation. <u>See</u> Fed. R. Evid. 702 (2003). <u>See also</u> <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 592 (1993); <u>Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 741-43 (3d Cir. 1994).

Mr. Spaeth has been offered as an "expert" to testify that, based upon various Internet and database searches he conducted, the term "solutions" communicates that a company offers more than products.

However, contrary to Defendant's assertion, this purported expert's mere citation to other alleged uses of the terms "solutions" and "building solutions" does not assist this Court with resolving any disputed issues in this case.

The significance of third-party uses depends wholly upon their use. <u>See</u> <u>Smith Bros. Mfg. Co. v. Stone Mfg. Co.</u>, 476 F.2d 1004, 1005 (C.C.P.A. 1973) ("But in the absence of any evidence showing the *extent of use* of any such marks or whether any of them are now in *use*, they provide no basis for saying that the marks so registered have had, or may have, any effect at all on the public mind so as to have a bearing on likelihood of confusion.")(emphasis in original). <u>See also</u> <u>Chips 'N Twigs, Inc. v. Chip-Chip, Ltd.</u>, 414 F.Supp. 1003, 1017 (E.D. Pa. 1976) ("However the mere introduction of these third party registrations does not prove that the marks to which they apply are actually used in commerce."); <u>Express Funding, Inc. v. Express Mortgage, Inc.</u>, 894 F.Supp 1095, 1100 (E.D. Mich. 1995) ("The rather voluminous search results submitted by Funding, though, do not establish that Mortgage's marks are weak, because they do not reveal the <u>scope of use</u> of the other, similar, marks. As Professor McCarthy has noted, '[t]he mere citation of third party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness.'")(emphasis added).

Despite this clear, overwhelming authority, Mr. Spaeth made no attempt whatsoever to ascertain whether any of the references disclosed by his searches are currently in use, the extent

2

and nature of such use, or whether the use is licensed by and thus inures to the benefit of Plaintiff. (See Spaeth Dep. at 158-61, 168-69, attached as Ex. A.) Without such information, any testimony regarding alleged third-party "uses" does not and cannot establish that such listings have had any impact or made any impression on the relevant public, and so does not assist this Court to determine the facts in issue in this case.

Mr. Spaeth's report and proposed testimony that the term "solutions" allegedly communicates that a company offers more than products is immaterial and incompetent. Such "evidence" should be excluded. Even assuming, *arguendo*, "solutions" might convey to some unidentified segment of some population (unidentified by Mr. Spaeth) that a company which offers "solutions" offers more than products, such testimony does not go to any matter of fact that is material to a determination of the issue in this case. Mr. Spaeth is not a linguist and has not explained—and the record does not establish—how his reliance upon alleged third-party database listings of the term "solutions" logically supports his ultimate opinion regarding the purported colloquial meaning of such term—particularly when Mr. Spaeth had no information whatsoever regarding any such uses.

Further, there is no need to argue about the nature of the "facts" presented where, as here, the law renders immaterial the alleged "fact." That is, the term "solutions" as Spaeth would define it conveys no specific, direct information at all, and less so in the context of construction products and the companies that distribute such products. Where a mark or term conveys no direct information as to the nature, characteristics, quality of a good or service, the mark or term is not merely descriptive, but is inherently distinctive. See, e.g., In re Bright-Crest, Ltd., 204 USPQ 591 (T.T.A.B. 1979) (holding that issue of whether a term is descriptive cannot be determined in the abstract, but rather must be examined in relation to the specific goods or services, the context in which the mark is being used on or in connection with such goods or

3

services, any significance that the mark is likely to have to the average purchaser of the goods or services as a result of the manner in which it is used).

## B. Conclusion

As discussed above, and set forth more fully in Plaintiff's Memorandum of Law in support of it Motion to Prelude the Proposed Testimony and Expert Report of Tony Spaeth, Mr. Spaeth's proposed testimony is an improper attempt by Defendant to mislead rather than enlighten on legal issues, adds nothing to this case in terms of the facts of the matter and evidence, and would simply waste this Court's and the Plaintiff's time.

Accordingly, Plaintiff respectfully requests that this Court preclude Mr. Spaeth's proposed testimony and expert report.

Respectfully submitted,

_____
Roberta Jacobs-Meadway
Lynn Rzonca
Richard E. Peirce
Kyrus L. Freeman
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
215-665-8500
Attorneys for Plaintiff

Dated: May 30, 2003

## CERTIFICATE OF SERVICE

I, Lynn E. Rzonca, an attorney, certify that a true and correct copy of the foregoing <u>Plaintiff's Response To Defendant's Opposition To Plaintiff's Motion To Preclude the Proposed Testimony and Expert Report of Tony Spaeth</u>, and proposed Order were served on counsel for Defendant on May 30, 2003 as set forth below:

<u>Via U.S. Mail</u>
Ramsey M. Al-Salam, Esq.
Perkins Coie LLP
1201 Third Ave.
Suite 4800
Seattle, WA 98101-3099

<u>Via U.S. Mail</u>
David L. Grove, Esq.
Montgomery McCracken
Walker & Rhoads LLP
123 S. Broad St.
Philadelphia, PA 19109

<u>Via U.S. Mail</u>
Jeffrey D. Neumeyer, Esq.
Boise Cascade Corp.
1111 W. Jefferson St.
P.O. Box 50
Boise, ID 83728-0001

Lynn E. Rzonca

Dated: May 30, 2003

PHL_A #1759611 v1

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CERTAINTEED CORPORATION : CIVIL ACTION
:
vs. :
:
BOISE CASCADE CORPORATION : NO. 02-2677

**ORIGINAL**

Philadelphia, Pennsylvania

May 22, 2003


Pretrial examination of OTTO L. SPAETH, JR., taken on behalf of the plaintiff at the offices of Ballard Spahr Andrews & Ingersoll, 1735 Market Street, Philadelphia, Pennsylvania, on the above date, commencing at 10:15 a.m., before Linda A. Ricciardi, Certified Court Reporter.





**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA 19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

1  whether any of the 18,000 U.S. companies that
2  you say were returned by your Hoover's
3  database search included the term Building
4  Solutions?
5  A.    I don't believe I made that search.
6  Q.    With respect to the results of the
7  Hoover search did you take any action to
8  determine what industry any of the results
9  pertained to?
10 A.    I don't think so.
11 Q.    Did you take any steps to determine
12 whether any of the references disclosed by
13 your Hoover search were in actual commercial
14 use?
15              MR. NEWELL: Objection to the
16 form.
17              THE WITNESS: No, it would not
18 occur to me to think that they are not in
19 commercial use. I believe their basis is on
20 companies which are in business.
21 BY MS. RZONCA:
22 Q.    Did you take any steps to determine
23 any geographic area of use of any of the
24 references returned by your Hoover database



```
 1   search?
 2   A.      Other than they are U.S. companies,
 3   no.
 4   Q.      Did you take any action to determine
 5   whether any of the uses were under license
 6   from CertainTeed?
 7   A.      No.
 8   Q.      With respect to the research you
 9   conducted in the Dun and Bradstreet database
10   did you take any steps to determine whether
11   any of the results returned by your search
12   showed use of the term Building Solutions?
13   A.      No.
14   Q.      Do you agree that your report does not
15   identify how you conducted your Dun and
16   Bradstreet database research?
17   A.      Yes.
18   Q.      Nor does it identify how you conducted
19   the Hoover's database research?
20   A.      No, but I would think in both
21   instances the method of search is understood
22   to be a count of hits.
23   Q.      Do you agree that with respect to the
24   Hoover's and the Dun and Bradstreet searches
```



1  your report does not state what fields you
2  searched in?
3  A.   Does not state what fields, yes, it
4  does not state what fields I searched in.
5  Q.   And it does not indicate what
6  industries were searched?
7  A.   It does not suggest that there was a
8  search by industry.
9  Q.   Did you review any of the references
10 returned by your Dun and Bradstreet search?
11 A.   No.
12 Q.   Is there anything that prevented you
13 from doing so?
14 A.   No, I thought it would be unproductive
15 and irrelevant and pointless.
16 Q.   Is it true that you took no steps with
17 respect to the results returned by the Dun
18 and Bradstreet database to determine whether
19 any of the references were in active
20 commercial use?
21 A.   No.
22 Q.   Or were uses under license from
23 CertainTeed?
24 A.   Correct.

 Royal Court Reporting Service, Inc.
1422 Chestnut Street, Suite 200R, Philadelphia, PA  19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

1  Q.     Or to determine that any geographic
2  area of use?
3  A.     Correct.
4  Q.     Or the industry of the use?
5  A.     Correct.
6  Q.     With respect to your Google search,
7  did you review any of the results returned?
8  A.     Yes, I selected as noted the top 30
9  hits.
10 Q.     Did you undertake any investigation of
11 the top 30 hits other than to open the web
12 sites for those hits?
13 A.     No, and I didn't necessarily open the
14 web sites for those hits.
15 Q.     So you may have simply reviewed the
16 results as returned to you on the Google
17 screen?
18 A.     Yes.
19 Q.     Do you think that you opened any of
20 the web sites for the top 30 hits?
21 A.     Yes, I believe I did, but I was
22 uncertain as to whether they represented
23 entities such as Creative Solutions, I wanted
24 to understand more about what that web site


**Royal Court Reporting Service, Inc.**
1422 Chestnut Street, Suite 200R, Philadelphia, PA 19102
Phone: 215-563-1782 • 1-888-595-RCRS • Fax: 215-563-2955

```
 1   A.    No, I don't think so, I think it is
 2   self evident, logic.
 3   Q.    Have you conducted any research to
 4   determine one way or the other whether the
 5   term Building Solutions is used, for example,
 6   in the pharmaceutical industry?
 7   A.    No.
 8   Q.    Is it true that you did not with
 9   respect to the results returned by the
10   Reference USA search conduct any assessment
11   other than reviewing the search results and
12   printing them?
13   A.    Yes.
14   Q.    That you did not take any action to
15   determine whether any of these references
16   were in actual commercial use?
17             MR. NEWELL:  Objection to the
18   form.
19             THE WITNESS:  Correct.
20   BY MS. RZONCA:
21   Q.    And you did not take any action to
22   determine any geographic area of use?
23   A.    No.
24   Q.    Or to determine any length of use?
```

```
 1   A.     No.
 2   Q.     Or to determine whether the use was
 3   under license from CertainTeed?
 4   A.     Correct.
 5   Q.     Do you agree that not all of the
 6   references returned by your search in
 7   Reference USA show use of the term "Building
 8   Solutions?"
 9   A.     Yes.
10   Q.     Will you please turn back to page 2 of
11   your report.  Under conclusions you list
12   three conclusions, correct?
13   A.     Three paragraphs, I haven't really
14   ascertained that there is one conclusion per
15   paragraph, but I will take your word for it.
16   Q.     Let's look at them.  Your first
17   paragraph states, "'Boise Building Solutions'
18   is in no sense fanciful in its use of the
19   phrase Building Solutions; it is using a
20   generic description, commonly understood as
21   an offering focused on solving customer
22   problems related (in this case) to sourcing
23   building materials."  Do you see that?
24   A.     Yes.
```

