IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CERTAINTEED CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civ. Action No. 02-2677 |
| v. | ) | |
| | ) | Hon. William H. Yohn |
| BOISE CASCADE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

It is hereby ORDERED that Plaintiff's Motion To Preclude The Expert Report And Proposed Testimony Of Michael A. Stepnowski is GRANTED and Defendant is precluded from offering at trial, referring to, or relying upon the report of Mr. Stepnowski or the testimony of Mr. Stepnowski.

BY THE COURT:

_____
YOHN, J.

Dated this _____ day of _____ 2003.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CERTAINTEED CORPORATION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> BOISE CASCADE CORPORATION, ) <br> ) <br> Defendant. ) | Civ. Action No. 02-2677 <br><br> Hon. William H. Yohn |

### PLAINTIFF'S RESPONSE TO DEFENDANT'S OPPOSITION TO MOTION TO PRECLUDE THE PROPOSED TESTIMONY AND EXPERT REPORT OF MICHAEL STEPNOWSKI

In this trademark infringement action involving Defendant's infringement of Plaintiff's "BUILDING SOLUTIONS" trademark, Defendant has offered Mr. Michael Stepnowski as an "expert" to testify, based on highly questionable methodology, "whether or to what extent contractors, when purchasing building materials, could be confused by Boise's use of the term 'Boise Building Solutions.'" Def.'s Opp'n to Pl.'s Mot. to Preclude Proposed Testimony and Expert Rept. of Greg Brooks, Michael Stepnowski and Tony Spaeth at 10 ("Opposition," filed May 22, 2003).

Plaintiff's Motion to Preclude more than adequately establishes why the proposed testimony and report of Mr. Stepnowski should be excluded. However, Plaintiff is compelled by Defendant's reliance on immaterial matters in the Opposition briefly to emphasize that:

1. the protections of trademark and unfair competition law are not limited to confusion as to source, but also apply to confusion as to affiliation, connection, or sponsorship; and

2. listings of alleged third-party uses of a mark are completely immaterial if there is no evidence of the nature and extent of such alleged use.

Accordingly, the proposed "expert" testimony is improper and should be excluded.

A.  **Mr. Stepnowski's Proposed Testimony Is Predicated On An Erroneous View of the Applicable Legal Test**

To be admissible, expert testimony must be such as will assist the trier of fact to understand the <u>evidence</u> or to determine a <u>fact</u> in issue; <u>and</u> the proposed testimony may not be merely based on subjective belief or unsupported speculation. <u>See</u> Fed. R. Evid. 702 (2003); <u>see also</u> <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579, 592 (1993); <u>Paoli R.R. Yard PCB Litig.</u>, 35 F.3d 717, 741-43 (3d Cir. 1994).

Expert testimony regarding purchaser or customer perceptions is mere speculation unless supported by a competent survey. <u>See</u> <u>Pharmacia Corp. v. Alcon Lab., Inc.</u>, 201 F. Supp.2d 335, 377 (D.N.J. 2002) (holding that apart from consumer surveys, lay or expert testimony is "inadmissible or entitled to little weight") (citations omitted). Nevertheless, Defendant asserts that Mr. Stepnowski is necessary in this case to hypothesize on the issue of whether purchasers are confused regarding the *source* of goods they purchase. <u>See</u> Opp'n at 10.

Further, such proposed testimony sheds no light whatsoever on the critical issue of whether purchasers who encounter the mark "BOISE BUILDING SOLUTIONS" in connection with goods and services similar and related to Plaintiff's goods and services rendered under its "BUILDING SOLUTIONS" trademark are likely to believe that Defendant's goods and services are in some way affiliated with, connected to, sponsored by, or otherwise associated with Plaintiff and its "BUILDING SOLUTIONS" trademark. <u>See, e.g.</u>, 15 U.S.C. § 1125(a); <u>see also</u> <u>A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.</u>, 237 F.3d 198, 216 (3d Cir. 2000). In offering Mr. Stepnowski as an expert regarding "source confusion" (which is not the relevant test), Defendant ignores the clear law that for actionable likelihood of confusion, purchasers need not be likely to believe that the owner of a mark—<u>i.e.</u>, Plaintiff—actually produced the item and

2

placed it on the market. Rather, as applied here, purchasers' belief that Plaintiff sponsored or otherwise approved of Defendant's use of the "BUILDING SOLUTIONS" mark satisfies the statutory likelihood of confusion requirement. See, e.g., Triangle Publ'g, Inc. v. Standard Plastic Prod., Inc., 241 F.Supp. 613, 619 (E.D. Pa. 1965) (holding that defendant's use of mark would unlawfully create impression among advertisers and consumers that defendant's merchandise is associated with plaintiff). See also Champions Golf Club v. Champions Golf Club, 78 F.3d 1111, 1121 (6th Cir. 1996) ("The district court noted that despite their sophistication, golfers would likely be confused about whether the courses were affiliated, but appears not to have appreciated that *this* is the ultimate question to be answered in the likelihood if confusion inquiry.")(emphasis in original); National Football League Properties, Inc. v. Wichita Falls Sportswear, Inc., 532 F.Supp. 651, 659 (W.D. Wash. 1982) ("Likelihood of confusion in a sponsorship context focuses on the product bearing the allegedly infringing marks and asks whether the public believes the product bearing the marks originates with or is somehow endorsed or authorized by the plaintiff.").

Hence, any proposed "expert" testimony in this case—such as Mr. Stepnowski's—based on personal speculation and directed to "source" confusion should be excluded as unhelpful and held inadmissible under Federal Rule of Evidence 403 as being of such marginal relevance to the disputed issues in this case that it amounts to nothing other than a distraction and waste of time.

**B.    Mr. Stepnowski Did Not Confirm Whether the Alleged Third-Party "Uses" He Cites are Actually Currently or Ever Were In Use.
Any Testimony Concerning Such Alleged Use Is Irrelevant Where There Is No Evidence to Be Offered As To the Nature and Extent of Actual Use.**

Defendant is offering through a so-called "expert" the results of a search of a publicly available database, ostensibly to demonstrate the relative weakness of Plaintiff's "BUILDING

SOLUTIONS" trademark. Mr. Stepnowski supports his conclusions based on a random Internet search he performed. There is no evidence that Mr. Stepnowski has any expertise in investigating the use of marks or as a research librarian.

Contrary to Defendant's assertion, the mere citation by Defendant's proffered "expert" to other alleged uses of the terms "solutions" and "building solutions" does not, and cannot, assist this Court in resolving any disputed issues in this case.

The significance of third-party uses depends wholly upon their use. See Smith Bros. Mfg. Co. v. Stone Mfg. Co., 476 F.2d 1004, 1005 (C.C.P.A. 1973) ("But in the absence of any evidence showing the *extent of use* of any such marks or whether any of them are now in *use*, they provide no basis for saying that the marks so registered have had, or may have, any effect at all on the public mind so as to have a bearing on likelihood of confusion.")(emphasis in original). See also Chips 'N Twigs, Inc. v. Chip-Chip, Ltd., 414 F.Supp. 1003, 1017 (E.D. Pa. 1976) ("However the mere introduction of these third party registrations does not prove that the marks to which they apply are actually used in commerce."); Express Funding, Inc. v. Express Mortgage, Inc., 894 F.Supp 1095, 1100 (E.D. Mich. 1995) ("The rather voluminous search results submitted by Funding, though, do not establish that Mortgage's marks are weak, because they do not reveal the *scope of use* of the other, similar, marks. As Professor McCarthy has noted, '[t]he mere citation of third party registrations is not proof of third party uses for the purpose of showing a crowded field and relative weakness.'") (emphasis added).

Despite this clear, overwhelming authority, Mr. Stepnowski made no attempt whatsoever to ascertain whether any of the references disclosed by his searches are currently in use, the extent and nature of such use, or whether the use is licensed by and thus, inures to the benefit of Plaintiff. (See Court Reporter's Unofficial version of Stepnowski Dep. at 142-45, 151-53, 166-

4

67, attached as Ex. A.) Without such information, any testimony regarding alleged third-party "uses" does not and cannot, establish anything, and thus cannot assist this Court to determine any facts in issue in this case.

C. **Conclusion**

As discussed above, and set forth more fully in Plaintiff's Memorandum of Law in support of its Motion to Prelude the proposed testimony and expert report of Michael Stepnowski, Mr. Stepnowski's proposed testimony is an improper attempt by Defendant to mislead rather than enlighten on legal issues, adds nothing to this case in terms of the facts of the matter and evidence, and would simply waste this Court's and the Plaintiff's time.

Accordingly, Plaintiff respectfully requests that this Court preclude Mr. Stepnowski's proposed testimony and expert report.

Respectfully submitted,

Roberta Jacobs-Meadway
Lynn Rzonca
Richard E. Peirce
Kyrus L. Freeman
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
215-665-8500
Attorneys for Plaintiff

Dated: May 30, 2003

5

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CERTAINTEED CORPORATION    : CIVIL ACTION

                                      :

vs.                        :

                                      :

BOISE CASCADE CORPORATION   : NO. 02-2677

    Philadelphia, Pennsylvania

    May 21, 2003

    Pretrial examination of

MICHAEL A. STEPNOWSKI, taken on behalf of the

plaintiff at the offices of Ballard, Spahr,

Andrews & Ingersoll, 1735 Market Street,

Philadelphia, Pennsylvania, on the above

date, commencing at 10:35 a.m., before Linda

A. Ricciardi, Certified Court Reporter.

1

1  restrict your search for the term Building
2  Solutions with respect to any particular
3  field?
4  A.  No.
5  Q.  Is it true that you did not review all
6  of the results of your search for the term
7  Building Solutions?
8  A.  Yes.
9  Q.  I am sorry, I wasn't done with my
10 question. Let me start again. Is it true
11 that you did not review all of the results of
12 your search for the term Building Solutions
13 that you conducted on April 9th?
14 A.  Yes.
15 Q.  Approximately how many of the search
16 results did you review?
17 A.  Approximately 30.
18 Q.  Why did you only look at 30 of the
19 results of the search that you conducted on
20 April 9th?
21 A.  It was vast and in the thousands, and
22 I didn't have time at that time to review
23 every one of them.
24 Q.  Did you save in any way the entirety

142

1   of the results of your April 9th search?

2   A.   No.

3   Q.   Is it true that your April 23rd report

4   does not present the entire result of your

5   April 9th search?

6   A.   Yes.

7   Q.   Is it true that your report does not

8   indicate what material you chose not to look

9   at of the results of your April 9th search?

10   A.   Yes.

11   Q.   Is it true that the report does not

12   explain your rationale for the sites that you

13   excluded from your review?

14   A.   Yes.

15   Q.   Is it true that your report does not

16   indicate what industries your search

17   included?

18   A.   I am sorry, I will have to ask you to

19   read that.

20         (Whereupon the court reporter

21         read back from the record.)

22         THE WITNESS:  No.

23   BY MS. RZONCA:

24   Q.   How is that not true?

1  A.   I was searching Building Solutions,
2  therefore, I think it is a fair assumption
3  that I was searching the building industry.
4  Q.   Is it true that your report does not
5  set forth the entirety of the industries
6  encompassed by the results of your April 9th
7  search?
8  A.   Yes.
9  Q.   Of the approximately 30 results of the
10  April 9th search that you did review did you
11  conduct any independent investigation to
12  determine whether the term Building Solutions
13  was being used as a trademark?
14  A.   No.
15  Q.   Did you conduct any investigation to
16  determine whether those 30 results that you
17  reviewed were still in active use?
18       MR. NEWELL:  Objection to the
19  form.  No definition of the term active use,
20  definition what it means in this context.
21       THE WITNESS:  Yes.
22  BY MS. RZONCA:
23  Q.   Is it true that you did not undertake
24  any investigation with respect to the 30

144

1  results of your April 9 search that you
2  reviewed to determine the size or geographic
3  scope of the entities disclosed by the
4  search?
5  A.  Yes.
6  Q.  You set forth in your report a
7  sampling of the approximately 30 results that
8  you did review, correct?
9  A.  Yes.
10 Q.  You set forth ten of those 30,
11 correct?
12 A.  No.
13 Q.  How is that not correct?
14 A.  I set forth 15 of the -- oh, I am
15 sorry, I apologize.
16 Q.  In the text of your report on page 2
17 you set forth ten of the listings that you
18 reviewed?
19 A.  You are absolutely correct.
20       MR. NEWELL:  Counsel what would
21 they be, Boise --
22       MS. RZONCA:  Correct, where the
23 report states a sampling of the listing
24 follows and the ten entities are called out.

1   A.   Yes.

2   Q.   In the medical field?

3   A.   Yes.

4   Q.   In virtually any field that MSN

5   searched?

6   A.   Yes.

7   Q.   Do you agree that your expert report

8   with respect to your April 16th search does

9   not present the entire search result?

10   A.   Yes.

11   Q.   And you did not review all of the

12   results returned from your April 16th search?

13   A.   Yes.

14   Q.   Do you agree that your report does not

15   identify what search results were excluded

16   from your review with respect to the April

17   16th search?

18           MR. NEWELL:  Objection to the

19   form.  Could you read it back?

20           (Whereupon the court reporter

21           read back from the record.)

22           THE WITNESS:  Yes.

23   BY MS. RZONCA:

24   Q.   As with the results of your April 9th

1  search, you didn't conduct any independent
2  investigation as to the April 16th search
3  results to determine whether any of the
4  results that you did review were using the
5  term Building Solutions as trademark?
6  A.  I think the answer is no.
7  Q.  I am happy to clarify if you have a
8  question?
9  A.  Would you please?
10 Q.  Yes. With respect to your April 16th
11 search you don't state in your report how
12 many of those search results you actually
13 looked at, correct?
14 A.  Correct.
15 Q.  Is there a reason why you didn't?
16 A.  There was too vast a field to select
17 from.
18 Q.  Did you look at any or did you simply
19 obtain the total number of listings returned
20 by your search?
21      MR. NEWELL: Objection to the
22 form.
23      THE WITNESS: I believe I only
24 noted the amount of listings. Yes, the

152

1   answer is yes, I do not believe I looked at

2   any but rather noted the amount, the number

3   of listings.

4   BY MS. RZONCA:

5   Q.  So obviously you didn't conduct any

6   independent investigation of any of the

7   entities who owned the web sites referenced

8   by your April 16th search, correct?

9          MR. NEWELL:  Objection to the

10  form.

11         THE WITNESS:  Yes.

12  BY MS. RZONCA:

13  Q.  On page 3 of your search, I am sorry,

14  of your expert report, you refer to an

15  advance search that you conducted, correct?

16  A.  Yes.

17  Q.  Was that still on April 16th?

18  A.  Yes.

19  Q.  In that search you limited the results

20  to one site per domain that showed the term

21  Building Solutions, correct?

22  A.  Yes.

23  Q.  You didn't open any of those results,

24  correct?

1  correct?

2  A.  Yes.

3  Q.  Do you see the domain identifier at

4  the bottom of the page for Killby and

5  Gayford?

6  A.  Yes.

7  Q.  Do you see the reference to .co.uk?

8  A.  Yes.

9  Q.  Do you understand the country level

10 identifier to refer to the United Kingdom?

11 A.  Yes.

12 Q.  You would agree this is used not in

13 the United States but in the United Kingdom?

14 A.  Yes.

15 Q.  The third reference in your first

16 attachment is for Carolina Building

17 Solutions, correct?

18 A.  Yes.

19 Q.  The first reference that you attach to

20 your first exhibit, it is true that you did

21 not conduct any independent investigation to

22 determine whether any of those entities were

23 in business, correct?

24 A.  Yes.

1   Q.   Or to determine how long any of the
2   entities may have been using the term
3   Building Solutions?
4   A.   Yes.
5   Q.   Or the geographic area of any use?
6   A.   Yes.
7   Q.   Or how or where the term was promoted?
8   A.   Yes.
9   Q.   Or whether the use was under license
10  from CertainTeed?
11  A.   Yes.
12  Q.   And nothing prevented you from
13  undertaking that investigation, correct?
14  A.   No, nothing prevented me.
15  Q.   Can you identify what is included as
16  the next set of documents attached to your
17  report?
18  A.   These are the search results that I
19  referred to in my report.
20  Q.   Are you referring to those listed on
21  pages 2 through 3 of your report, the
22  sampling from your April 9th search?
23  A.   Yes.
24  Q.   As to all of these references you did

## CERTIFICATE OF SERVICE

I, Lynn E. Rzonca, an attorney, certify that a true and correct copy of the foregoing <u>Plaintiff's Response To Defendant's Opposition To Plaintiff's Motion To Preclude the Proposed Testimony and Expert Report of Michael Stepnowski</u>, and proposed Order were served on counsel for Defendant on May 30, 2003 as set forth below:

<u>Via U.S. Mail</u>
Ramsey M. Al-Salam, Esq.
Perkins Coie LLP
1201 Third Ave.
Suite 4800
Seattle, WA 98101-3099

<u>Via U.S. Mail</u>
David L. Grove, Esq.
Montgomery McCracken
Walker & Rhoads LLP
123 S. Broad St.
Philadelphia, PA 19109

<u>Via U.S. Mail</u>
Jeffrey D. Neumeyer, Esq.
Boise Cascade Corp.
1111 W. Jefferson St.
P.O. Box 50
Boise, ID 83728-0001

Lynn E. Rzonca

Dated: May 30, 2003

PHL_A #1759611 v1