UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CERTAINTEED CORPORATION,<br><br>　　Plaintiff,<br><br>v.<br><br>BOISE CASCADE CORPORATION,<br><br>　　Defendant. | Civil Action No. 02-2677<br><br>Hon. William H. Yohn |

**DEFENDANT BOISE CASCADE CORPORATION'S
REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE MATERIAL FACTS ARE UNDISPUTED | 1 |
| III. | THE TRADEMARK REGISTRATIONS ARE IRRELEVANT | 2 |
| IV. | "BUILDING SOLUTIONS" IS GENERIC FOR BUILDING PRODUCTS AND SERVICES | 2 |
| V. | BOISE IS MAKING FAIR USE OF THE TERM "BUILDING SOLUTION" | 4 |
| VI. | CERTAINTEED MISINTERPRETS THE LIKELIHOOD OF CONFUSION FACTORS | 5 |
| VII. | CONCLUSION | 7 |

## I. INTRODUCTION

Defendant Boise Cascade Corporation ("Boise") has moved for summary judgment because CertainTeed cannot establish that Boise's customers will be confused as a result of Boise's use of the term "Building Solutions" and/or because Boise is using the term "Building Solutions" in a fair manner (i.e., because it is using the term generically, or at least descriptively, to refer to building products and services). As discussed below, CertainTeed's opposition does not dispute the material facts and its legal arguments are misdirected.

## II. THE MATERIAL FACTS ARE UNDISPUTED

Although CertainTeed has proffered a lot of paper (mostly unauthenticated exhibits), and quibbles about specific language in Boise's statement of undisputed facts, it has not substantively challenged the following dispositive facts:

(1) Boise is not using the term " Building Solutions" in connection with the services recited in CertainTeed's trademark registrations (e.g., "does not provide customized marketing materials") and is not using the expression as the name of a marketing program (as used by CertainTeed);

(2) Boise is using the term "Building Solutions" in only two manners: (i) as a division name to distinguish Boise's paper and office businesses; and (ii) to refer to its siding product as "A Boise Building Solution";

(3) CertainTeed always uses its name in connection with its "Building Solutions" program (even if "offset"), and Boise always uses its name when it uses the term "Building Solutions";

(4) Boise's customers are bulk purchasers of building products (not the contractors or remodelers to which CertainTeed directs its products and services);

(5) Boise's decision to use the term "Boise Building Solutions" was not an attempt to trade off any goodwill associated with CertainTeed's "Building Solutions" program; and

(6) There is no evidence that any Boise customer has been confused as to the source of Boise's products or services.

These are the material facts. The other facts raised by CertainTeed, including Boise's knowledge of CertainTeed's registrations at the time it formally adopted its new division names, are

immaterial. They do not bear on the critical issue of the case – whether Boise's activities have created a likelihood of confusion and/or whether it is making fair use of the term.

### III.  THE TRADEMARK REGISTRATIONS ARE IRRELEVANT

CertainTeed's briefing repeatedly emphasizes that its owns two trademark registrations, claiming that the "mark" is thus strong and not generic. *See, e.g.,* Opp. at 3-4, 10, 16. The trademark registrations are *irrelevant* as a matter of law. Under Third Circuit law, the rights associated with a trademark registration are limited to the services recited in the registrations. *See Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383, 1396-97 (3d Cir. 1985) ("The Lanham Act provides that the protection afforded by registration extends to '*the goods or services specified in the registration*. . . .'") (emphasis in original). The right associated with a registered mark "extends only so far as the goods or services noted in the registration certificate." *Id.* (quoting *Mushroom Makers, Inc. v. R.G. Barry Corp.*, 580 F.2d 44, 48 (2d Cir. 1978)); *see also Moore Push-Pin Co. v. Moore Business Forms, Inc.*, 678 F. Supp. 113, 116 (E.D. Pa. 1987) (noting that the "impact and scope" of the trademark registration are limited to the specific products and services recited therein).

CertainTeed has presented no evidence that Boise is using the term "Building Solutions" for the services recited in the trademark registrations. Instead, Boise uses the term to refer to building products and services. To the extent CertainTeed can prevent such use, it must prove that it has *common law* rights that apply to such services. *See Natural Footwear*, 760 F.2d at 1397.

### IV.  "BUILDING SOLUTIONS" IS GENERIC FOR BUILDING PRODUCTS AND SERVICES

CertainTeed argues that Boise's "burden to establish genericy is high," citing *Filipino Yellow Pages, Inc. v. Asian Journal Publications, Inc.*, 198 F.3d 1143 (9th Cir. 1999). Opp. at 16. Again, CertainTeed misconstrues the law. *Filipino Yellow Pages* held that where a term is not registered for the relevant products or services, as is the case here, the "plaintiff has the burden of proving nongenericness once the defendant asserts genericness as a defense." 198 F.3d at 1146. CertainTeed cannot meet that burden.

CertainTeed argues that the term "Building Solutions" is not generic because it is not the "genus of a marketing program that provides incentives to contractors, builders and remodelers who buy a broad array of products or services." Opp. at 15-16, *see also* Opp. at 10. ("[A]n imaginative leap is required to understanding the relationship of the BUILDING SOLUTIONS mark to the marketing program and other products and services for which it is used.") Whether "Building Solutions" is generic for a marketing program is irrelevant because Boise is not using "Building Solutions" in connection with such services. Boise is using the term to refer to building products and services. There is no "imaginative leap" necessary to understand that the term "Building Solutions" refers to products or services that solve building problems. In fact, CertainTeed's witnesses have admitted that the term is generic for such products and services.

Courts have repeatedly held that a mark, even if it is not generic for certain products, may be generic for others:

> A mark that is descriptive, suggestive, arbitrary or fanciful when applied to some products may nonetheless be generic when applied to certain other products, namely those products that require the use of their name in order to convey their nature to the consumer. "Rosemary Fried Surfboards" would be an arbitrary mark entitled to protection. But "Rosemary Fried Chicken" would probably be generic. . . ."

*Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d at 137, 147 (2d Cir. 1997) (holding that defendant was using "Honey Brown" in generic sense to refer to ales).

CertainTeed also argues that the term is "distinctive" because it could have a double meaning. Opp. at 17. Although CertainTeed cites *In re Colonial Stores, Inc.*, 394 F.2d 549 (CCPA 1968) to support this claim, *Colonial Stores* did not so hold. In *Colonial Stores*, the court acknowledged that sugar and spice were descriptive terms of common ingredients in baked goods, but noted that when "sugar and spice" were used together, the nursery rhyme "sugar and spice and everything nice" was evoked, making the trademark suggestive. *Id.* at 552-53. The court relied on the connection to a common, pre-existing nursery rhyme in finding that the descriptive terms, taken together, were suggestive. *Id.* The court distinguished marks such as "Building Solutions" that are "devoid of reminiscent, suggestive or associative connotation." *Id.* at 553.

Other courts have made clear that a term that can interpreted two ways may be still be generic or descriptive. In *Security Works!, Inc. v. Security World Int'l, Inc.*, 33 U.S.P.Q.2d 1734 (S.D. Fla. 1994), for example, the court, in denying plaintiff's motion for a preliminary injunction, held that plaintiff's name and slogan "Security Works!" was descriptive, even if it could be interpreted in two ways:

> Reading the mark as a sentence, the term 'works' is a verb and the mark conveys the message that security can work to protect the consumer. The word 'works' can also be read as a noun, and as noted above, is descriptive of the Plaintiff's service. . . . However, the undersigned finds that the existence of an additional meaning to the Plaintiff's mark does not negate the fact that the mark is descriptive of the service itself and does not transform an otherwise descriptive term into a suggestive one. In short, the term Security Works!, although it may also be a slogan, does not "require 'imagination, thought, and perception to reach a conclusion as to the nature of the goods' or services [and therefore] it cannot be considered a suggestive term."

33 U.S.P.Q.2d at 1737; *see also Miller Brewing Co. v. G. Heileman Brewing Co., Inc.*, 561 F.2d 75, 80-81 (7th Cir. 1977) (holding that "light" or "lite" is a generic term used to describe "beer's color, flavor, body, or alcoholic content," the level of calories, or how filling it is).

## V. BOISE IS MAKING FAIR USE OF THE TERM "BUILDING SOLUTION"

Because "Building Solutions" is generic for building products and services, CertainTeed cannot establish common law trademark rights necessary to prevent such use. To the extent that the term is descriptive as used by Boise, then Boise's use is fair use as a matter of law. CertainTeed suggests that fair use cannot apply to the use of registered mark in a slogan or tagline. The argument has no legal support. Courts have routinely held that a slogan or advertising tagline may constitute fair use of another's trademark. *See., e.g., Captain Tony's Pizza, Inc. v. Domino's Pizza, Inc.*, 23 U.S.P.Q.2d 1552, (W.D.N.Y. 1992) (finding defendant's slogan "Anyway You Want It" fair use of the plaintiff's registered service mark); *American Diary Queen Corp. v. RTO, Inc.*, 16 U.S.P.Q.2d 1077 (N.D. Ill. (1990) (denying preliminary injunction to plaintiff, finding defendant's use of slogan "We Treat You Right" not likely to infringe

registered slogan of plaintiff where slogans are descriptive, used in conjunction with other marks, and plaintiff's and defendant's products differ).

Relying on *Sands, Taylor & Wood Co. v. The Quaker Oats Co.*, 124 U.S.P.Q.2d 405 (7th Cir. 1992), CertainTeed claims that the "alliterative nature of the slogan 'A Boise Building Solution' evidences that Boise is also using the term as a trademark." Opp. at 22-23. The only alliteration is between "Boise" and "Building," the latter of which is the generic business in which Boise operates. Describing a product as a "Building Solution" is a generic or descriptive use of the term, and is distinguishable from use of the term "Thirst Aid" in the *Sands, Taylor* case. Boise's use of the expression "A Boise Building Solution" is fair use as a matter of law.

## VI.   CERTAINTEED MISINTERPRETS THE LIKELIHOOD OF CONFUSION FACTORS

Because the term "Building Solutions" is generic for building products and services or because Boise is using it descriptively, Boise is entitled to summary judgment. An independently sufficient basis for the grant of summary judgment is that there is no likelihood of confusion. In that regard, CertainTeed misinterprets the likelihood of confusion factors. CertainTeed first discounts the fact that the parties always use their well-known brand names in connection with the term "Building Solutions." CertainTeed argues that Boise "cannot avoid infringement by simply injecting [its] name in front of the allegedly infringing mark. . . ." Opp. at 6. That is not true. Courts have consistently held that a party's use of its brand or house mark may preclude any confusion. *See, e.g., First Keystone Fed. Sav. Bank v. First Keystone Mortgage, Inc.*, 923 F. Supp. 693, 704 (E.D. Pa. 1996) ("[T]he evidence demonstrates that in all written or 'official' communications, the parties' full names are always used and in this way the dominant portion of the mark is tempered. In their full form, the names are not identical.").

CertainTeed also argues that there is "no evidence" to support the claim that the sophistication of the parties' customers precludes confusion." Opp. at 11. This is an astounding assertion in light of CertainTeed's representation to the Patent and Trademark Office that the sophistication of its customers prevented any confusion with its products and services and those offered by the owners of the "Building Integrated Solutions" and "Building Solutions"

trademarks (e.g., CertainTeed argued that its customers would not be confused with Mr. Letovsky's use of the '200 trademark registration).

As to Boise's customers, who are the ones exposed to Boise's use of the expression, there is no dispute that they are not purchasing any low-priced products. *See* Opp. at 11 (arguing that the price of relevant products "spans a wide range"). They are wholesale purchasers buying in bulk. They are not the "remodelers, subcontractors, and handymen" that CertainTeed claims may be less sophisticated. *Id.* at 12.

CertainTeed admits there is no evidence of actual confusion, but argues that this evidence should be discounted because "Boise only just launched Home Plate under the BOISE BUILDING SOLUTIONS umbrella and prior to that had little if any direct competition with CertainTeed. . . ." Opp. at 13. Boise has been using "Boise Building Solutions" as its division name since March 2002, and there has been no confusion. CertainTeed repeatedly suggests that such confusion may occur *in the future*. *See* Opp. at 6 ("Boise is waiting to see if it can dodge the consequences . . . before its expands its use of BUILDING SOLUTIONS. . . ."); Opp. at 14 ("These overlapping channels [of trade] will only increase as Boise executes its plans to diversity [sic] by selling more value-added construction products."). CertainTeed thus, at least implicitly, admits that Boise's past and current activities do not create confusion. Nevertheless, CertainTeed asks the Court to speculate that such confusion may occur in the future. The Complaint asserts Boise infringed CertainTeed's trademark rights, not that *infringement might occur*. Speculation about future activities cannot support CertainTeed's claim that trademark infringement *has occurred*. *See Moore Push-Pin Co. v. Moore Business Forms, Inc.*, 678 F. Supp. 113 (E.D. Pa. 1987) (denying injunctive relief because, among other things, the "degree of confusion that may result in the future . . . is highly speculative at this stage").

CertainTeed also asserts that likelihood of confusion is evidenced by Boise's bad faith in adopting the mark, asserting that such adoption constitutes "willful" infringement. Opp. at 13-14. Boise's actions cannot, as a matter of law, evidence likelihood of confusion. "Willful infringement" of a trademark means that the junior user adopted the mark with an intent to trade off the goodwill of the trademark owner: "Willful infringement carries a connotation of deliberate intent to deceive." *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1406 (9th Cir.

1993) (affirming finding that defendant was not a willful trademark infringer). In *Securacomm Consulting, Inc. v. Securacom, Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), the Third Circuit reversed a finding of willful trademark infringement, although defendant was using the same distinctive name as plaintiff and had refused to cease using the mark. The court noted that willful trademark infringement "involves an intent to infringe or a deliberate disregard of a markholder's rights." 166 F.3d at 187. A "defendant's refusal to cease using a mark upon demand is not necessarily indicative of bad faith," particularly where the defendant has a "plausible basis for believing use of its name was not likely to cause confusion." *Id.* at 189.

In the instant case, there is no evidence that Boise adopted its "Boise Building Solutions" name, or its tagline "A Boise Building Solution," to trade off any purported goodwill associated with CertainTeed. Boise adopted the expression "Boise Building Solutions" to better describe its building business (i.e., to communicate that it provides products and services), and for the same reason it adopted "Boise Paper Solutions" and "Boise Office Solutions" for its other business divisions. There is no evidence that Boise adopted the name to cause confusion or with intentional disregard of CertainTeed's rights. Boise also has, as a matter of law, a "plausible basis" for believing that no confusion is occurring.

## VII.   CONCLUSION

Because "Building Solutions" is a generic expression for building products and services, because Boise has used the expression in a fair manner to describe its products and services, and/or because there is no likelihood of confusion arising from Boise's use, summary judgement should be granted.

Respectfully submitted,

DATED: August 6, 2003.

By: /s/ Ramsey M. Al-Salam, by DLGrove
Ramsey M. Al-Salam
Perkins Coie LLP

Attorneys for Defendant Boise Cascade Corporation

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date she caused a copy of the foregoing **Defendant Boise Cascade Corporation's Reply Brief in Support of Motion for Summary Judgment** to be served upon the following persons by the methods stated:

**By Facsimile and U.S Mail:**

Bruce P. Keller, Esquire
Debevoise & Plimpton
919 Third Avenue
New York, NY 10022

**By Hand Delivery:**

Roberta Jacobs-Meadway, Esquire
Lynn E. Rzonca, Esquire
Richard Pierce, Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

DATED: August 6, 2003

_____
Pamela Theisen