IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CERTAINTEED CORPORATION, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 02-2677 |
| | ) | |
| v. | ) | Hon. William H. Yohn |
| | ) | |
| BOISE CASCADE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW, this _____ day of _____, 2003, upon consideration of defendant's motion to preclude the proposed expert report and testimony of Mary Woodford, and the submissions of the parties with respect thereto, it is hereby **ORDERED** that said motion is **GRANTED**.

_____
William H. Yohn, Jr., U.S.D.J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CERTAINTEED CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 02-2677 |
| ) | |
| v. ) | Hon. William H. Yohn |
| ) | |
| BOISE CASCADE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO PRECLUDE
THE PROPOSED EXPERT REPORT AND TESTIMONY OF MARY WOODFORD**

Defendant Boise Cascade Corporation hereby moves the Court for an order precluding the proposed expert report and testimony of Mary Woodford.

In support of this motion, defendant incorporates by reference, as if set forth fully herein, its accompanying brief.

WHEREFORE, defendant Boise Cascade Corporation respectfully requests that this Court grant its motion to preclude the proposed expert report and testimony of Mary Woodford and award defendant such other and further relief as the Court deems just, equitable and proper.

August 28, 2003

Ramsey M. Al-Salam
PERKINS COIE LLP
1201 Third Avenue, Ste. 4800
Seattle, WA 98101
(206) 583-8888

David Grove
James Cashel
MONTGOMERY MCCRACKEN WALKER
　& RHOADS LLP
123 S. Broad St.
Philadelphia, PA 19109
(215) 772-1500

Jeffrey D. Neumeyer
BOISE CASCADE CORPORATION
1111 West Jefferson Street
P.O. Box 50
Boise, ID 83728
(208) 384-7460

Attorneys for Defendant
Boise Cascade Corporation

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CERTAINTEED CORPORATION, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 02-2677 |
| ) | |
| v. ) | Hon. William H. Yohn |
| ) | |
| BOISE CASCADE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO PRECLUDE THE PROPOSED EXPERT REPORT AND TESTIMONY OF MARY WOODFORD**

| | | | |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | PERTINENT FACTS | | 3 |
| | A. | Overview of the Case | 3 |
| | B. | CertainTeed Has Suffered No Harm or Damage | 3 |
| | C. | CertainTeed Claims Unjust Enrichment Based on the Costs of Boise's Branding Program | 4 |
| | D. | Boise's Branding Program Involved Much More Than "Solutions" Nomenclature | 4 |
| | E. | There is No Evidence that Boise Adopted "Boise Building Solutions" in Bad Faith | 7 |
| III. | MS. WOODFORD'S TESTIMONY SHOULD BE EXCLUDED | | 8 |
| | A. | CertainTeed is Not Entitled to Recover Boise's Profits in the Absence of Willful Infringement | 8 |
| | B. | There is an Insufficient Nexus to Support Ms. Woodford's Theory of Unjust Enrichment | 10 |
| IV. | CONCLUSION | | 12 |

## I.   INTRODUCTION

In this case, plaintiff CertainTeed Corporation ("CertainTeed") alleges that defendant Boise Cascade Corporation ("Boise") has infringed CertainTeed's two trademark registrations and an alleged common law trademark for "Building Solutions." For the reasons discussed in Boise's summary judgment motion, the claims are meritless as a matter of law.

In addition to having no basis for asserting liability, CertainTeed also has no basis for recovering any money. There is no evidence, for example, that any CertainTeed customers have been confused into buying Boise products, or that Boise has obtained any unjust enrichment from the use of the term "Boise Building Solutions" to identify its building division. Nevertheless, in a desperate attempt to articulate some claim for a monetary amount, CertainTeed has retained an economic consultant, Mary Woodford, to testify that CertainTeed should recover approximately one-third of the costs that Boise incurred in its "rebranding" program. Ms. Woodford's opinion is that the costs of the program are a "surrogate" for the "unjust enrichment" that Boise will later enjoy from using the term "Boise Building Solutions." In particular, Ms. Woodford opines that Boise would not have spent the money on branding if it were not going to obtain increased profits in return.

Because Ms. Woodford's testimony depends on faulty legal and factual assumptions, and because the admission of that testimony would unnecessarily lengthen and complicate any trial of this matter, it should be excluded. In particular, the testimony should be excluded because CertainTeed cannot recover any of Boise's alleged "unjust enrichment" unless it can show that Boise *willfully* infringed CertainTeed's rights. There is no evidence of any such willful infringement. Boise's adoption of the division name "Boise Building Solutions" had nothing to do with CertainTeed, and Boise obtained and relied upon advice of counsel before beginning use of the name. Accordingly, the necessary condition for the recovery of Boise's unjust enrichment does not exist.

Further, there is an insufficient nexus between the costs of Boise's branding program and any alleged unjust enrichment from Boise's use of the term "Boise Building Solutions." Even Ms. Woodford admits there is no "direct" relationship. Further, contrary to Ms. Woodford's assumption, the branding program involved much more than the adoption of the "Solutions" nomenclature for Boise's businesses. The branding program was primarily directed at research and related activities regarding the "Boise" brand, the discontinuation of the tree logo, and the adoption of the "Work.Build.Create" tag line and brand promise. There have been few costs associated with implementing the use of "Boise Building Solutions" because, among other things, it is not used on Boise product labels, packaging or trucks (as opposed to the new "Boise" brand, which is used on products and trucks).[1] Accordingly, a fundamental assumption supporting Ms. Woodford's analysis is missing.

Because there is no legal basis for the recovery of Boise's alleged unjust enrichment, and because the nexus between Boise's branding program and the alleged unjust enrichment Boise will enjoy from using the term "Boise Building Solutions" is too tenuous to support any expert opinion on unjust enrichment, much less justify the time and resources the Court and parties will have to expend at trial to explain all the associated issues (e.g., all the details and costs associated with the branding program and implementation), Ms. Woodford's testimony and evidence should be excluded.

This motion is supported by the declaration of Ramsey Al-Salam filed herewith. Mr. Al-Salam authenticates Ms. Woodford's report and the deposition testimony cited herein.

---

[1] Ms. Woodford's assumption that the branding program will result in higher future profits is also misplaced because, as she admits, much of the impetus was to communicate a clear message to Wall Street. Although that message could arguably result in a higher stock valuations, that does not translate to higher profits for the business.

2

## II. PERTINENT FACTS

### A. Overview of the Case

This is a trademark infringement case relating to the term "Building Solutions." CertainTeed uses the term "Building Solutions" for a marketing program that encourages its customers to purchase a wide variety of CertainTeed products. CertainTeed sells non-wood siding, ventilation, decking and related products.

Boise has three divisions, one in the building business, one in the paper business and one in the office supply business. Boise refers to these businesses as "Boise Building Solutions," "Boise Paper Solutions" and "Boise Office Solutions." Boise Building Solutions sells wood products that do not directly compete with CertainTeed's products (although CertainTeed has made much of Boise's intention to introduce a composite siding product that will compete with CertainTeed's non-wood siding). Boise always uses its famous brand name "Boise" when it uses the term "Boise Building Solutions," and does not put the term on any product packaging, labels or trucks. For these and related reasons, Boise has moved for summary judgment on all of CertainTeed's claims.

### B. CertainTeed Has Suffered No Harm or Damage

The Complaint in this action asserts that CertainTeed "has sustained . . . substantial damages" from Boise's actions. *See* Complaint, ¶¶ 35, 45. The Complaint also seeks recovery of such alleged damages. *Id.*, Prayer for Relief, ¶ 3. In fact, CertainTeed now admits that it cannot identify any evidence that its customers have been confused into purchasing Boise products (as opposed to CertainTeed products) or that it has otherwise suffered any actual harm or damage. *See, e.g.,* Woodford Dep. at 49 (CertainTeed expert admits that she has seen no "evidence of actual damages suffered by CertainTeed").[2]

---

[2] The cited pages of the deposition testimony of Ms. Woodford are attached to Mr. Al-Salam's declaration as Exhibit 2.

3

### C. CertainTeed Claims Unjust Enrichment Based on the Costs of Boise's Branding Program

Because it cannot show any actual damage, CertainTeed seeks to recover Boise's alleged unjust enrichment. The *only* theory that CertainTeed has presented with respect to such unjust enrichment is the expert report[3] of Mary Woodford. Ms. Woodford's report concedes that "to recover disgorgement of Boise's profits as a measure of unjust enrichment, [CertainTeed] may need to demonstrate willfulness by Boise." Report, ¶ 7. Ms. Woodford expresses no opinion, however, as to whether such willful infringement has occurred. Woodford Dep. at 50. She then estimates Boise's unjust enrichment as between $1.92 and $3.2 million "based on a portion of the investment Boise made in connection with the renaming of Boise Building Solutions and other businesses ('Boise's Rebranding') as a surrogate for the expected future returns Boise Building Solutions would enjoy as a result of the rebranding." Report ¶ 9. Ms. Woodford uses this "surrogate" measure of unjust enrichment because she cannot "directly" find any "correlation between Boise's adoption of the term 'Boise Building Solutions' and [the] sales or profits of Boise's business." Woodford Dep. at 78-79. The admission that there is no "direct" correlation between Boise's alleged unjust enrichment and its adoption of the term "Boise Building Solutions," is a sufficient basis to exclude Ms. Woodford's testimony on the subject.

Further, as discussed below, the "indirect" nexus Ms. Woodford attempts to find does not withstand scrutiny.

### D. Boise's Branding Program Involved Much More Than "Solutions" Nomenclature

Ms. Woodford's opinion is premised on her assumption that the Boise "branding program" was directed at developing and implementing three Boise "brands": "Boise Building Solutions," "Boise Office Solutions" and "Boise Paper Solutions." *See* Woodford Dep. at 58-59 (assuming there was "one project and three different names came out of it"). This

---

[3] Ms. Woodford's report is attached to Mr. Al-Salam's declaration as Exhibit 1.

4

assumption is the basis for her taking the total costs of the branding project and attributing a portion to the adoption and implementation of "Boise Building Solutions."

Ms. Woodford's assumption is wrong. The undisputed evidence is that the branding program involved much more than simply the adoption of the "Solutions" nomenclature. The Boise branding program originated in late 2000 and resulted in a "brand launch" in March 2002. The original purpose of the program, including the original research, was to determine whether Boise's "brand" (i.e., the messages it communicates to the public) was consistent with its business. Walton Dep. at 14-15.[4] Boise's business has evolved over the years from a timber company, to a wood products manufacturer, to a company that derives much of its revenue from the distribution of office, paper and building products. Boise currently has three divisions: a building division (including timberlands, manufacturing, and distribution), a paper division, and an office products division. Ackerman Dep. at 33 [5].

Boise historically used "Boise Cascade" and a "tree" logo as the identifier for its company and division. Boise's divisions made inconsistent use both of the Boise Cascade name, however, and the tree logo. The office products division, for example, associated the tree logo with the timberlands business, and felt it was inappropriate for its business. Accordingly, Boise's branding program originated from a desire to determine whether Boise's businesses could adopt a consistent and unifying theme or brand.

The great bulk of the costs incurred prior to March 2002 on the branding program arose from Boise's retention of the New York marketing and communications firm, Siegelgale, to assist it in researching issues associated with Boise's business and the selection of an appropriate brand and theme. Siegelgale's original research was directed at determining "whether or not there was a case to be made for having one company brand or whether there should be perhaps two or three different brands under a corporate umbrella." Ackerman Dep.

---

[4] The cited pages of the deposition testimony of Ms. Walton are attached to Mr. Al-Salam's declaration as Exhibit No. 3.

[5] The cited pages of the deposition testimony of Larry Ackerman are attached to Mr. Al-Salam's declaration as Exhibit No. 4.

5

at 31-32. Siegelgale undertook numerous interviews and focus groups with Boise "stakeholders," including Boise's employees, customers, and investors. *See* Ackerman Dep. at 109 (Siegelgale went "deep into interviews internally and externally and reviewing secondary source materials, communication materials, literature. . . ."). None of that research, however, was directed at the "nomenclature" for the division (i.e., the division identifiers). *Id.* at 46. There has never been any attempt to get feedback from customers on the adoption of "Boise Building Solutions." Walton Dep. at 40, 45, 47.

The research led Siegelgale to conclude that Boise had "the makings of a one company brand." Ackerman Dep. at 32. Although the businesses had described themselves as providing building, paper and office products to companies, Siegelgale concluded that "Boise was not giving itself the credit it deserved for the solutions it actually provided its customers. . . ." *Id.* at 33. There was "more to Boise Cascade than simply the perception of being a forest products company; . . . the main strength of the company taken as a whole evolved around how [it] support[s] customer operations in essential ways." *Id.* at 39; *see also* Walton Dep. at 31-32 ("But most powerful was the feedback from our customers and other stakeholders that we were more than the sum of our parts. . . . They valued us for our ability to work with them, to help them solve problems, to help them get things done."). Siegelgale's original recommendations were thus that Boise drop the word "Cascade" and tree logo, except where it was being used with its timber industry. *See* Walton Dep. at 19 ("The initial brand research indicated that, indeed, our tree-in-circle and our trade term of "Boise Cascade" definitely had more applicability to our core timber and wood businesses than to some of our other emerging businesses. . . ."). The "priority" during much of the research was Boise's adoption of the word "Boise" alone as its basic trade name. Ackerman Dep. at 60-61.

In addition to helping develop the "Boise" brand, Siegelgale also developed a "brand promise" around the concept that Boise helps its customers work, build and create. To emphasize the brand promise, Siegelgale developed and helped implement Boise's tagline "Work.Build.Create." Ackerman Dep. at 70-71; *see also* Walton Dep. at 59-60.

As part of the brand implementation, Boise has repainted its trucks and redone its packaging. Neither Boise's trucks, nor its packaging, however, have been changed to include

the term "Boise Building Solutions." Walton Dep. at 11. The changes to packaging are that the packaging now bears "the new Boise logo, as opposed to the tree and circle in the old logo." *Id.* at 104.

### E. There is No Evidence that Boise Adopted "Boise Building Solutions" in Bad Faith

As discussed below, CertainTeed must prove that Boise willfully infringed its alleged rights to recover Boise's alleged unjust enrichment. There is no evidence to support such a claim. There is no evidence, for example, that the persons involved selected the "Solutions" nomenclature to benefit from any goodwill that CertainTeed may have in the term. In fact, the undisputed testimony is that "Solutions" was adopted because it better described the range of products and service provided by Boise.

Further, before beginning use of the term "Boise Building Solutions," Boise cleared its use both through its in-house and through its outside trademark counsel, Lisa Caldwell. Although that clearance resulted in the identification of the trademark registrations that CertainTeed has asserted in the case, Boise's counsel concluded that its use would not infringe any rights owned by CertainTeed. In particular, Boise's counsel noted there were many other uses of "Solutions" (i.e., it is a diluted name), that Boise was not using it for the services recited in CertainTeed's trademark registrations, and that Boise's use of it to describe its business was a "fair use" under the Lanham Act. This opinion was communicated to Boise both orally and, later, in a formal written opinion. *See* Al-Salam Decl., Exh. No. 5.

After CertainTeed complained about Boise's use, Boise sought an independent opinion from other outside trademark counsel – Jessica Levy of the Preston, Gates and Ellis firm. Ms. Levy reached the same opinion as Ms. Caldwell, and summarized her advice in a formal opinion as well. *See* Al-Salam Decl., Exh. No. 6. Based on Boise's "discussions with counsel and what they found, [Boise was] confident that [it was] not infringing upon CertainTeed's use of 'Solutions,' that [it was] not creating confusion in the marketplace, and that [it] could go forward. . . ." Walton Dep. at 73, 79-81 (discussing oral opinions received); *see also* Walton Dep. at 120 ("My understanding, based on [counsel's] opinion, was that we

7

were not infringing anyone's trademark, we were using this as a descriptive term in a way that did not create marketplace confusion. . . .").

In part to ensure that there would be no confusion created by Boise's use of the term "Boise Building Solutions," Boise adopted guidelines that require that the "Boise" brand name always be used with the term "Building Solutions," and that it not be placed on its products, packaging or trucks. *See* Walton Dep. at 99, 102-105. In sum, there is no evidence that Boise deliberately attempted to confuse customers into purchasing its products, or otherwise adopted "Boise Building Solutions" to benefit from any goodwill associated with CertainTeed's marketing program. There is also no evidence that Boise deliberately disregarded CertainTeed's rights. In fact, the evidence points to the opposite – Boise obtained and relied upon the advice of counsel.

### III. MS. WOODFORD'S TESTIMONY SHOULD BE EXCLUDED

#### A. CertainTeed is Not Entitled to Recover Boise's Profits in the Absence of Willful Infringement

The Third Circuit, as do most circuits, requires a finding of willful infringement before a trademark plaintiff may recover a defendant's profits. *See Securacomm Consulting, Inc. v. Securacom, Inc.,* 166 F.3d 182, 190 (3d Cir. 1999) ("[A] plaintiff must prove that an infringer acted willfully before an infringer's profits are recoverable."). "Willful infringement" requires more than simply knowing of defendant's registered trademark; it requires an intentional desire to benefit from the defendant's trademark or a deliberate disregard of the trademark holder's rights. In *Securacomm*, for example, the Third Circuit reversed a finding of willful trademark infringement, although defendant was using the same distinctive name as plaintiff and had refused to cease using the mark. The court noted that willful trademark infringement "involves an intent to infringe or a deliberate disregard of a markholder's rights." 166 F.3d at 187. A "defendant's refusal to cease using a mark upon demand is not necessarily indicative of bad faith," particularly where the defendant has a "plausible basis for believing use of its name was not likely to cause confusion." *Id.* at 189. *See also A&H Sportswear, Inc. v. Victoria's Secret*

8

*Stores, Inc.*, 61 U.S.P.Q.2d 1637, 1641 (E.D. Pa. 2002) (rejecting claim of willful infringement because defendant had not acted in "bad faith" and willful infringement required more than evidence that defendant "deliberately (as opposed to accidentally) chose the name and . . . knew of the existence of [defendant's trademark]").

In the instant case, there is no evidence that Boise adopted its "Boise Building Solutions" name to trade off any purported goodwill associated with CertainTeed. Boise adopted the expression "Boise Building Solutions" to better describe its building business (i.e., to communicate that it provides products and services), and for the same reason it adopted "Boise Paper Solutions" and "Boise Office Solutions" for its other business divisions. There is no evidence that Boise adopted the name to cause confusion or with intentional disregard of CertainTeed's rights. Boise also has, as a matter of law, a "plausible basis" for believing that no confusion is occurring.

Further, Boise relied upon not just one, but *two* opinions of outside counsel in adopting and continuing to use the term "Boise Building Solutions." Courts have consistently found a party's reliance on opinions of counsel undermine any claims of bad faith. *See Robert Bruce v. Sears Roebuck & Co.*, 343 F.Supp. 1333, 1342 (E.D. Pa. 1972) ("If Sears adopted the mark in good faith, in reliance upon the advice of counsel, with no fraudulent intent and with no intent to cause confusion or deceive the public (as we also find), then Sears' intent is crucial in relieving it from liability for money damages. . . .").

At best, CertainTeed can argue that Boise knew of CertainTeed's trademark registration when it launched the mark. As noted above, this is insufficient to find any bad faith or willfulness. The Court should thus preclude Ms. Woodford's testimony. The time and resources necessary for the Court and the parties to address an accounting of Boise's profits (e.g., to sort through all the costs and expenses associated with Boise's branding program) are not justified when there is no evidence of willful infringement.

9

B.  **There is an Insufficient Nexus to Support Ms. Woodford's Theory of Unjust Enrichment**

In addition, an expert's damage theory must be grounded on supportable assumptions, and not speculation. The courts have consistently excluded an expert's damages testimony where it is based on unsupportable assumptions. *See e.g., Elcock v. Kmart Corp.,* 223 F.3d 734, 755-56 (3d Cir. 2000) (excluding economist's testimony regarding future earnings as speculative where assumptions lacked foundation in the record and expert failed to take into account plaintiff's post-injury earnings); *The American Bearing Co., Inc. v. Litton Indus., Inc.,* 540 F. Supp. 1163, 1172-73 (E.D. Pa. 1982) (excluding economist's testimony regarding damages as speculative and misleading where total dollar amount of sales and market share based on opinion and not factual record); *J&J Enterprises, Inc. v. Via Veneto Italian Ice, Inc.,* No. 97-CV-0652, 1998 U.S. Dist. LEXIS 5098 (E.D. Pa. Apr. 15, 1998) (excluding expert's damages opinion as unreliable when he was unaware of many important underlying facts; *Creative Dimensions in Management, Inc. v. Thomas Group, Inc.,* No. 96-6318, 1999 U.S. Dist. LEXIS 5623 (E.D. Pa. Apr. 15, 1999) (excluding expert's damages testimony as speculative and based on improper assumptions).

Similarly, in the instant case, Ms. Woodford's testimony is based on false assumptions. Ms. Woodford's primary assumption is that the branding program was merely directed at adopting the terms "Boise Building Solutions," "Boise Office Solutions" and "Boise Paper Solutions":

> Boise's total investment in Boise's Rebranding, therefore, is between $6 and $10 million. It is reasonable to acknowledge that Boise's new branding concerned not only Boise Building Solutions but also Boise Office Solutions and Boise Paper Solutions. Therefore, I have apportioned Boise's investment in Boise's Rebranding to the infringing Boise Building Solutions, based on its share, i.e. 32 percent, of Boise total sales from operations from 2000 to 2002.

Woodford Rpt., ¶ 45; *see also* Woodford Dep. at 58-59 (assuming there was "one project and three different names came out of it").

In addition, Ms. Woodford is under the mistaken assumption that "Boise Building Solutions" *is* the *brand* that Boise adopted (*id.* at 54), and is unaware of any distinction between the brand and the nomenclature (*id.* at 63). Ms. Woodford also assumed that the branding program included putting "Boise Building Solutions" on product labels and trucks. *Id.* at 65-66.

All of these assumptions are wrong. The primary expenses in the branding program had nothing to with the corporate nomenclature "Boise Building Solutions," "Boise Office Solutions" or "Boise Paper Solutions." Similarly, the expenses associated with the implementation of the branding change had very little to do with "Boise Building Solutions."

Further, Ms. Woodford *assumes* that the costs expended on adopting "Boise Building Solutions" will, in the future, be recovered as increased profits arising from such adoption. As Ms. Woodford concedes, one of the primary purposes of the branding program was to communicate Boise's business better to Wall Street. *See, e.g.,* Woodford Dep. at 86 (agreeing that one of the purposes of the branding program was to "describe [Boise's] business more accurately to Wall Street"). Ms. Woodford admitted that she was "not sure that purely an increase in the stock price is going to be recoverable by CertainTeed." *Id.* at 88. Nevertheless, her report does not explain why better communications to Wall Street of Boise's business can be a recoverable portion of "unjust enrichment."

There is no basis for asserting that a clearer message to Wall Street will translate into higher operational profits. In sum, Ms. Woodford's logic depends on three unsupported assumptions: (1) that there is evidence that Boise committed willful infringement; (2) that the branding program and the expense of that program was merely directed at adopting the term "Boise Building Solutions"; and (3) that more clearly communicating Boise's business to Wall Street will result in increased profits. Each of these false assumptions is an independently sufficient basis to exclude Ms. Woodford's testimony. Together, they are an overwhelming basis for excluding the testimony.

11

## IV.   CONCLUSION

For the reasons set forth above, Ms. Woodford's testimony should be excluded.

DATED this 28th day of August 2003.

By: /s/ Ramsey M. Al-Salam
Ramsey M. Al-Salam
PERKINS COIE LLP
1201 Third Avenue, Ste. 4800
Seattle, WA 98101
(206) 583-8888

David Grove
James Cashel
MONTGOMERY MCCRACKEN WALKER
   & RHOADS LLP
123 S. Broad St.
Philadelphia, PA 19109
(215) 772-1500

Jeffrey D. Neumeyer
BOISE CASCADE CORPORATION
1111 West Jefferson Street
P.O. Box 50
Boise, ID 83728
(208) 384-7460

Attorneys for Defendant
Boise Cascade Corporation

-3

## CERTIFICATE OF SERVICE

The undersigned certifies that on this date he caused a copy of **Defendant's Motion to Preclude the Proposed Expert Report and Testimony of Mary Woodford (with Brief in Support of the Motion and Proposed Form of Order)** to be served upon the following persons by the methods stated:

**By Mail:**

Bruce P. Keller, Esquire
DEBEVOISE & PLIMPTON
919 Third Avenue
New York, NY 10022

**By Hand Delivery:**

Roberta Jacobs-Meadway, Esquire
Lynn E. Rzonca, Esquire
Richard Pierce, Esquire
BALLARD SPAHR ANDREWS & INGERSOLL, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103

DATED: August 28, 2003

_____
James D. Cashel