# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CERTAINTEED CORPORATION, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| BOISE CASCADE CORPORATION. | : | NO. 02-2677 |
| Defendant. | : | |
| | : | |

## Memorandum and Order

YOHN, J.                                                                                                                                                   September __, 2003

      Before this court is plaintiff's motion to preclude the testimony of Greg Brooks. Defendant offers Brooks's testimony to show that its use of the phrase "Building Solutions" is not likely to cause confusion between Boise and Certainteed. In the event that likelihood of confusion becomes an issue in this case, Brooks's ultimate opinion — that likelihood of confusion is highly unlikely — is inadmissible. However, I find that the factual portions of Brooks's testimony may be helpful in addressing the factors that will help this court decide whether there is likelihood of confusion. In light of its potential usefulness, Brooks's factual testimony will be admitted as discussed below.

      There are ten factors that courts consider in determining likelihood of confusion in both

competing and non-competing products cases. *A&H Sportswear, Inc. v. Victoria s Secret Stores, Inc.*, 237 F.3d 198 (3d. Cir. 2000). Those factors, known as the *Lapp* factors, are: 1) the degree of similarity between the owner s mark and the alleged infringing mark; 2) the strength of the owner s mark; 3) the price of the goods and other factors indicative of the care and attention expected of customers when making a purchase; 4) the length of time the defendant had used the mark without evidence of actual confusion arising; 5) the intent of the defendant in adopting the mark; 6) the evidence of actual confusion; 7) whether the goods are marketed through the same channels of trade and advertised through the same media; 8) the extent to which the targets of the parties sales efforts are the same; 9) the relationship of the goods in the minds of consumers because of the similarity of function; 10) other facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant s market or that he is likely to expand into that market. *Interspace Corporation v. Lapp, Inc.*, 721 F.2d 460, 462-63 (3d Cir. 1983).

Brooks asserts six reasons for his ultimate conclusion that Boise s use of the phrase Building Solutions is highly unlikely to cause confusion. Brooks Report at 6. The admittance of each will be considered in turn.

First, Brooks concludes that the term building solutions is common throughout both residential and commercial construction. *Id.* at 6. He bases this conclusion on an internet search he conducted on Google, a leading internet search engine. The results of his factual search appear relevant to *Lapp* factor 2, which considers the strength of the owner s mark, and are admissible. When conducting a strength analysis, it is useful to classify the mark as either generic, descriptive,

suggestive, arbitrary or fanciful.[1] In making the classification, it matters not so much whether the word itself is common; rather, the inquiry focuses on whether the way the word is used in a particular context is unique enough to warrant trademark protection. *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.,* 30 F.3d 466, 478 (3d Cir. 1994). Brooks's testimony speaks to the use of the term in the construction industry and as such it seems a useful gauge for measuring the strength of the mark.[2] This court, however, is concerned that Brooks's conclusion of common usage is over-reaching and at the same time falls short of providing an accurate reflection of the industry use of the term. An internet search alone may not accurately reflect the use of the term throughout the current industry, given that some of the sites may belong to defunct businesses, the phrase is not always used as a mark, and not all businesses have created websites. The conclusion is therefore not admissible.

Brooks's second reason regarding different uses of the mark does not appear to be significantly useful to an application of any one particular *Lapp* factor; however, it is essentially factual and may be relevant in evaluating how consumers encounter the mark in the marketplace

---

[1] Generic marks do not receive trademark protection; descriptive marks are entitled to protection only upon a showing of secondary meaning. Suggestive, arbitrary and fanciful marks are inherently distinctive and are thus entitled to protection. *Fisons Horticulture, Inc. v. Vigoro Industries, Inc.,* 30 F.3d 466, 478 (3d Cir. 1994); *A&H Sportswear*, 237 F.3d at 222 (finding that these classifications, used to determine whether a mark is protectable as a trademark, are not dispositive in evaluating strength under the *Lapp* test).

[2] A mark's strength is also measured by its commercial strength, or marketplace recognition. However, secondary meaning is better shown through evidence of advertising costs and surveys that measure customer recognition. *See Checkpoint Systems, Inc. v. Checkpoint Software Technologies, Inc.*, 269 F.3d 270, 283 (3d Cir. 2001). Brooks's report is not relevant on this point.

and relates obliquely to *Lapp* factors 7 and 8, addressing channels of trade and sales efforts. It is admissible, subject of course to cross-examination as to its factual accuracy.

Brooks's third conclusion, that "the two companies' product lines do not compete or overlap in any way," goes to *Lapp* factor 9, which considers the similarity of the goods. Pursuant to this factor, the court must evaluate "whether buyers and users of each parties' goods are likely to encounter the goods of the other, creating an assumption of common source affiliation or sponsorship." *Checkpoint Systems, Inc. v. Checkpoint Software Technologies, Inc.*, 269 F.3d 270, 286-87 (3d Cir. 2001). The inquiry is whether the consumer might conclude, based on the relatedness of the products, that one company sells both of the products. *Id.* at 286 (citing *Fisons*, 30 F.3d at 481). This portion of Brooks's testimony is also relevant to factor 10, which looks in part to any "facts suggesting that the consuming public might expect the prior owner to manufacture a product in the defendant's market, or that it is likely to expand into that market." *Id.* at 290. Some of Brooks's testimony here on methods of sale may also be applicable to *Lapp* factor 7, which looks in part to methods of sale to compare the companies' channels of trade. Although his factual testimony is admissible, the last sentence concerning likelihood of confusion would not be permissible.

Brooks's fourth consideration, regarding non-overlapping exposure, may help with *Lapp* factors 7 and 8. Brooks Report at 7. Factor 7 looks to whether the goods are marketed through the same channels of trade and advertised through the same media. Factor 8 looks to whether the relevant consumers are likely to encounter advertisements about both parties' products. *Checkpoint*, 269 F.3d at 289. The factual portion of this testimony is admissible but not any

4

conclusion concerning confusion.

Brooks's fifth reason speaks directly to *Lapp* factor 3, which considers the sophistication of consumers. Brooks Report at 8.[3] The factual portions of Brooks's testimony are admissible, subject to cross-examination on the accuracy of those statements. Brooks's conclusions regarding consumer confusion are not admissible.

If relevant at all, Brooks's sixth observation that both brands are "nationally known at all levels of the industry" goes to *Lapp* factor 2, which evaluates the strength of the mark. The fame of a mark is generally relevant in evaluating strength and secondary meaning, *see supra* note 2, but the Certainteed and Boise brands are not the marks in question. Only the term "building solutions" is at issue in this case, and Brooks's observations are relevant only in so far as they have some bearing on this mark as it appears in commerce. Again, the factual portions of Brooks's testimony are admissible while his opinions regarding confusion are not.

Brooks's testimony concerning likelihood of confusion is problematic and thus should be limited to the factual findings that are relevant to evaluating the *Lapp* factors. Although Brooks's reasoning does not afford a sufficient basis for ultimately concluding that consumers would be unlikely to be confused, the factual information he will be able to provide may help the court in evaluating the *Lapp* factors.

---

[3] As plaintiff points out, much of the Brooks testimony relies on Mr. Brooks's general knowledge of the industry. It appears that Brooks did not conduct any additional surveys or investigations aside from his internet and periodical searches for the purposes of developing his court-submitted report. The fact that his report is based solely on his industry experience may have some bearing on the weight of his testimony.

I find that Brooks's very extensive background in the building materials business, as outlined in his report, is sufficient to qualify him as an expert to testify concerning the industry structure and buying practices. Brooks Report at 1-5. I believe that his testimony in that regard is reliable as based on his experience and that it "fits" in that it would be helpful to the court in understanding the structure of the entire industry and how the various products and marketing channels of the parties interrelate.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CERTAINTEED CORPORATION,<br>Plaintiff,<br><br>v.<br><br>BOISE CASCADE CORPORATION,<br>Defendant. | :<br>:<br>:<br>:  CIVIL ACTION<br>:<br>:  NO. 02-2677<br>:<br>:<br>:<br>: |

# Order

And now, this _____ day of September 2003, upon consideration of plaintiff's memorandum in support of its motion to preclude the proposed testimony and expert report of Greg Brooks (Doc # 25), defendant's opposition to this motion (Doc. #28), plaintiff's response to defendant's opposition (Doc. # 33), and the deposition of Greg Brooks, and after oral argument, it is hereby ORDERED that plaintiff's motion to preclude the proposed testimony and expert report of Greg Brooks is GRANTED in part and DENIED in part.

_____
William H. Yohn, Jr., Judge