# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CERTAINTEED CORPORATION,                    :
Plaintiff,                                  :
                                            :
    v.                                      :         CIVIL ACTION
                                            :
BOISE CASCADE CORPORATION,                  :         NO. 02-2677
Defendant.                                  :
                                            :
                                            :
                                            :

## Memorandum and Order

YOHN, J.                                              April ___, 2004

  Plaintiff, CertainTeed Corporation, brings this action against defendant, Boise Cascade

Corporation, for trademark infringement and false designation of origin pursuant to 15 U.S.C. §

1114 and 15 U.S.C. §1125. Compl. ¶ 7. Plaintiff claims that Boise's use of the term "Building

Solutions" in connection with its construction products and its building division is likely to cause

confusion with CertainTeed's registered marks[1] as to the source or origin or sponsorship of

Boise's goods and services. Compl. ¶ 3.

  Currently pending before the court is the defendant's motion for summary judgment (Doc.

---

[1] As explained later, plaintiff has two federally registered trademarks that make use of the term "Building Solutions." Compl. ¶¶ 16-17. Plaintiff has registered "Building Solutions" accompanied by a sunflower motif (registration no. 1,823,200) as well as the mark "BUILDING SOLUTIONS," which appears by itself in all capital letters (registration no. 2,390,753).

# 38). Boise argues that granting summary judgment in its favor is appropriate based on any or all of the following grounds: 1) the term "Building Solutions" is generic when used to refer to building products and services; 2) Boise's use of the term "Building Solutions" constitutes a fair, descriptive use as a matter of law; and 3) there is no likelihood of confusion as a matter of law. Def.'s Brief at 1. For the reasons discussed below, I will grant the defendant's motion for summary judgment as to registration no. 2,390,753[2] and deny it as to registration no. 1,823,200.


**FACTUAL BACKGROUND**

Except where noted, the following facts are undisputed.

CertainTeed has two federally registered trademarks in the term "Building Solutions."

In 1994, CertainTeed registered the term "Building Solutions," accompanied by a sunflower motif, for "residential and commercial building and construction; namely, carpentry, additions and design consulting." United States Trademark Registration No. 1,823,200; Def.'s Statement of Material Facts ¶ 3; Pl.'s Opposition at 3. The registration has achieved incontestable status under the Lanham Act, 15 U.S.C. § 1065. Pl.'s Opposition at 4; Compl. ¶ 17, Exhibit C. Boise maintains that CertainTeed does not make use of the sunflower mark; however, CertainTeed argues that its licensee uses the mark and that this use inures to CertainTeed as a matter of law. Pl.s' Response to Boise's Statement of Undisputed Facts ¶ 9.

---

[2] I will deny the motion in so far as defendant claims that the term "Building Solutions" is generic. I will also deny the motion in so far as defendant claims its use of that term is fair use. However, I will grant the motion in so far as defendant argues that plaintiff cannot proceed with its claim that there is likelihood of confusion. I find that the mark is not legally protectable because the mark is not incontestable as a matter of law and, at most, as a descriptive term, there is not sufficient evidence from which a reasonable fact-finder could conclude that it has acquired secondary meaning.

In 2000, CertainTeed registered the mark "BUILDING SOLUTIONS," in all capital

letters for "preparations of customized marketing information for others, all relating to building

materials, for builders, architects and designers" and "analysis of electrical power and energy

needs of others, consulting services in connection with the design of electrical systems for others."

United States Trademark Registration No. 2,390,753; Def.'s Statement of Material Facts ¶ 1;

Pl.'s Opposition at 3-4.

CertainTeed uses its "BUILDING SOLUTIONS" mark (registration no. 2,390,753) in

connection with its marketing program. Def.'s Statement of Material Facts ¶ 5; Pl.'s Opposition

at 3.[3] CertainTeed often uses this term in all capital letters, as it appears in its registration, but

CertainTeed also uses the term as the defendant does in its title case form (i.e. "Building

Solutions"). *See* Compl., Exhibits A, D; Pl.'s Response, Exhibit 25; Defendant's Statement of

Material Facts, Exhibit 8. It has done so since at least 1996.[4] *Id*. CertainTeed's Building Solutions

program offers awards and rebates to builders, architects and contractors and others who use

CertainTeed products. Def.'s Statement of Material Facts ¶ 6; Pl.'s Opposition at 3. The parties

dispute whether CertainTeed places the term on any of its products or product labels. Def.'s

Statement of Material Facts ¶ 7. In its complaint, CertainTeed avers that it uses its mark as an

"umbrella brand" and that it appears "on and in connection with point of sale materials for a full

---

[3] For simplicity, and because plaintiff claims trademark status of the term "Building
Solutions," in all capital letters and in its title case form, I will refer to the contested mark
throughout the remainder of this memorandum as "Building Solutions," and where necessary
accompanied by its registration no. 2,390,753.

[4] CertainTeed asserts that it has used the term for the marketing program since 1991 and
used the term in connection with construction services since 1989; however, Boise disputes this
fact and asserts that use occurred no earlier than 1995 or 1996. Def.'s Statement of Material
Facts ¶ 5; Pl.'s Response to Boise's Statement of Undisputed Facts at ¶ 5.

range of construction products, including siding, roofing, decking, railing and fencing, and

insulation, windows, ventilation products and pipe and foundation products." Compl. ¶ 10.[5] In its

response to Boise's statement of the undisputed facts, CertainTeed maintains that it uses its mark

on point of sale materials for products. Pl.'s Response ¶ 7. CertainTeed also maintains in response

to Boise's assertions to the contrary that it does not always use the name CertainTeed in

association with term "Building Solutions." *Id*.

Beginning in approximately March of 2002, Boise began to use "Boise Building

Solutions" as the name of its building division.[6] Boise has also registered "boisebuildingsolutions"

as a domain name. Pl.'s Opposition at 6; Compl. ¶ 21, Exhibit E. According to the plaintiff, Boise

also uses the term in its advertising, on its products and trucks, in the media, and on its website.

Pl.'s Response ¶ 8.

Through its building division, Boise provides building products and services to distributors

and dealers and retailers of building materials. Def.'s Brief at 1. Boise distributes other

companies' building products and manufactures lumber products such as wood boards and panels.

---

[5] CertainTeed states that products and services that are eligible for its program "span CertainTeed's many divisions and are sold under different brands, including Bufftech, Wolverine, Ashland-Davis, Evernew and CertainTeed." *Id*. Pl.'s Opposition at 3.

[6] Boise has three major divisions: a building division, a paper division, and an office supply division. Until March 2002, each was respectively named Boise Cascade Building Products, Boise Cascade Paper Products, and Boise Cascade Office Products. Compl. ¶ 3; Pl.'s Opposition at 4-5; Def.'s Brief at 1. As part of a re-branding scheme, Boise substituted the term "Solutions" for the term "Products" for each of its divisions. *Id*. Boise also dropped "Cascade" from its name and stopped using its image of a tree in order to signify that it supplied more than just wood products. Def.'s Brief at 1. When Boise uses the term, it appears in title case as such: "Building Solutions." Def.'s Statement of Material Facts, Exhibit 36. According to the plaintiff, Boise also uses the term "Building Solution" in its singular form to refer to products individually, for example, to refer to a product as a "Boise Building Solution."

Pl.'s Opposition at 4. In June 2003, Boise began to carry Home Plate siding in its building division which, according to CertainTeed, competes directly with CertainTeed's siding. Pl.'s Opposition at 7. CertainTeed avers that this product is characterized by Boise in its advertising efforts as a Boise Building Solution. *Id*. Boise also distributes a decking product that competes directly with CertainTeed's decking product. *Id*. According to CertainTeed, both parties advertise in the same trade publications and at the same trade shows, attended by professionals, non-professional end users of building materials and home owners. *Id*.

**LEGAL STANDARD**

Summary judgment may only be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In order to defeat a properly supported motion for summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Crissman v. Dover Downs Entertainment, Inc*., 239 F.3d 357, 360-61 (3d Cir. 2001). All reasonable inferences are drawn in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted).

**DISCUSSION**

Boise argues that granting summary judgment in its favor is appropriate based on any or all of the following grounds: 1) the term "Building Solutions" is generic when used to refer to building products and services; 2) Boise's use of the term "Building Solutions" constitutes a fair, descriptive use as a matter of law; and 3) there is no likelihood of confusion as a matter of law. Def.'s Brief at 1. I will address each of these arguments in turn, prefaced by an overview of the applicable trademark principles.

Trademark law recognizes four separate categories of marks, listed here in order of decreasing distinctiveness: 1) arbitrary or fanciful terms, 2) suggestive terms, 3) descriptive terms and 4) generic terms. *A.J. Canfield Co. v. Honickman et al.*, 808 F.2d 291, 296 (3d Cir. 1986). Arbitrary or fanciful terms are "those words, symbols, pictures, etc., which are in common linguistic use but which, when used with the goods or services in issue, neither suggest nor describe any ingredient, quality or characteristic of those goods or services." *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 n.18 (3d Cir. 1991). Arbitrary and fanciful terms "bear no logical or suggestive relation to the actual characteristics of the goods." *A.J. Canfield*, 808 F.2d at 296. Suggestive terms suggest rather than describe the characteristics of goods or services. *Id*. Suggestive terms are "virtually indistinguishable from arbitrary marks." *Checkpoint Systems, Inc. v. Checkpoint Software Technologies, Inc.*, 269 F.3d 270, 282 (3d Cir. 2001). They require "imagination, thought or perception" to reach a conclusion as to the nature of the goods or services. *Id*.   A mark is inherently distinctive if it is arbitrary, fanciful or suggestive. *A.J. Canfield*, 808 F.2d at 297.

Descriptive and generic terms are never inherently distinctive. *Dranoff-Perlstein Assoc. v.*

*Sklar*, 967 F.2d 852, 855 (3d Cir. 1992). Descriptive terms describe a characteristic, ingredient or function of the product or service to which they refer. *A.J. Canfield Co.*, 808 F.2d at 296. Unlike suggestive and arbitrary marks, descriptive terms "convey an immediate idea of the ingredients, qualities or characteristic" of the goods or services. *Id.* at 297; *Checkpoint Sys.*, 269 F.3d at 282. Descriptive terms that have been registered but have not obtained incontestable status are legally protectable as trademarks if they have acquired secondary meaning. *Ford Motor Co.*, 930 F.2d at 291-92. That is, the plaintiff must show that consumers identify the term with the source, or the party claiming trademark protection. *A.J. Canfield Co.*, 808 F.2d at 297.

Generic terms function as the common descriptive name of a product class. *Dranoff-Perlstein*, 967 F.2d at 857; *A.J. Canfield Co.*, 808 F.2d at 296, 308. "A term is generic if it is the common name for a class of products rather than a name of the individualized product." *A.J. Canfield Co.,* 808 F.2d at 308. The distinction between descriptive and generic terms is "often somewhat elusive," but the distinction is crucial. *Dranoff-Perlstein*, 967 F.2d at 859 n. 15; *A.J. Canfield Co.*, 808 F.2d at 296-97. If a term is generic, it cannot qualify for trademark protection. *Dranoff-Perlstein*, 967 F.2d at 855. Generic terms are denied trademark status because granting one party "exclusive use would place competitors at a serious competitive disadvantage" by depriving them of the right to identify an article by its name. 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 11:88 (4th ed. 2003); 1 Jerome Gilson, *Trademark Protection and Practice* § 2.02 at 2-23 (1991); *A.J. Canfield Co.*, 808 F.2d at 297.

To show trademark infringement under the Lanham Act, a plaintiff must prove that 1) the mark is valid and legally protectable; 2) the mark is owned by the plaintiff; and 3) the defendant's use of the mark to identify goods or services is likely to cause confusion concerning the origin of

the goods or services. *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 291 (3d

Cir. 1991); *Opticians Assoc. of Am. v. Independent Opticians of Am.*, 920 F.2d 187 (3d Cir.

1990). The initial elements of the claim—validity, legal protectability, and ownership—are proved

if the mark at issue is federally registered and has become incontestable pursuant to 15 U.S.C. §§

1058 and 1065.[7] Where a mark has been registered but has not yet achieved incontestable status,

the plaintiff establishes validity, legal protectability, and ownership only if the mark is inherently

distinctive (i.e. arbitrary, fanciful or suggestive) or, if the mark is descriptive, if plaintiff can show

that the mark has acquired secondary meaning. *Ford Motor Co.*, 930 F.2d at 291-92 (citations

omitted).[8]

Boise contends that the term "Building Solutions," whether used by plaintiff or defendant,

is generic when used to refer to products and services that meet building problems or challenges.

---

[7] Incontestable status is achieved through five years of consecutive, unchallenged use and compliance with statutory formalities. 15 U.S.C. § 1065.

[8] CertainTeed only avers incontestable status for the mark "Building Solutions" accompanied by the sunflower design (registration no. 1,823,200). Pl.'s Opposition at 10. Because this mark is incontestable, there is no question about the ownership, validity, and legal protectability of this mark.

Boise avers that it does not make use of the sunflower motif (a point plaintiff does not contest); however, it does use the term "Building Solutions" in its title case form, just as the mark is registered. Def.'s Brief at 5. The parties make only cursory mention of the sunflower mark (registration no. 1,823,200), and neither of the parties does an adequate job of discussing the marks separately. It seems that CertainTeed is claiming that its rights in this mark have been infringed. It also appears, however, that CertainTeed has incorporated this mark into discussion as a means of attaching that mark's incontestable status to its other mark (registration 2,390,753), which has not yet achieved such status. Whether the defendant's use of the term "Building Solutions" is likely to cause confusion with the plaintiff's sunflower Building Solutions mark is a genuine issue of material fact. For these reasons, I will deny defendant's motion for summary judgment with respect to this mark.

The discussion that follows deals only with the term "Building Solutions" (registration no. 2,390,753).

Def.'s Brief. at 8, 13, 16. In doing so, Boise makes two arguments. First, Boise argues through implication that plaintiff's mark is generic. Yet, Boise also claims that even if plaintiff's mark is protectable, Boise may still use the term because its *own* use of the term "Building Solutions" is generic. *Id.* I will address each of defendant's genericness arguments in turn.

### A.  Whether plaintiff's use of the term "Building Solutions" is generic

Boise argues that CertainTeed uses its "Building Solutions" mark (registration no. 2,390,753) generically and thus CertainTeed may not prevent Boise from using the term to describe generically its own goods and services.

Genericness is a question of fact. McCarthy § 12:12. Registration of a mark constitutes *prima facie* evidence that the mark is valid. *Lucent Info. Management, Inc. v. Lucent Techs., Inc.*, 186 F.3d 311, 315 (3d Cir. 1999). If the plaintiff has a federal registration, it constitutes a strong presumption that the term is not generic[9] and defendant bears the burden of overcoming that presumption. McCarthy § 12:12; 15 U.S.C. § 1115(a).[10]

---

[9] Plaintiff misstates the rule when it asserts that a registered term is presumed distinctive. *See* McCarthy § 12:12; 15 U.S.C. § 1115(a). In fact, plaintiff later states the rule correctly that registration constitutes *prima facie* evidence that the mark is not generic. *Cf.* Pl.'s Opposition at 10-11 and 16.

[10] Evidence used to prove genericness can include the following: 1) generic use by competitors that has not been contested by plaintiff; 2) evidence that the proponent of trademark status uses the term as a generic name; 3) dictionary definitions are relevant and sometimes persuasive in determining public usage because the assumption is that dictionary definitions "usually reflect the public's perception of a word's meaning and its contemporary usage"; 4) generic usage in the media such as in trade journals and newspapers; 5) testimony of those who are familiar with the term's marketplace usage; and 6) consumer surveys. McCarthy § 12:13.
    The primary significance test and its related test of consumer understanding have also helped courts determine whether a mark is generic. *A.J. Canfield Co.*, 808 F.2d at 299. The primary significance test asks whether the primary significance of a term in the minds of the

CertainTeed has registered the term "Building Solutions" for "preparations of customized marketing information for others, all relating to building materials for builders, architects and designers" and "analysis of electrical power and energy needs of others, consulting services in connection with the design of electrical systems for others." United States Trademark Registration No. 2,390,753; Def.'s Statement of Material Facts ¶ 1; Pl.'s Opposition at 3-4. Thus, the registered mark is accorded validity, and the burden is on the defendant to overcome the presumption that CertainTeed's registered mark is not generic. In other words, Boise bears the burden of proving that the term "Building Solutions" is generic for the uses specified in CertainTeed's registration.

In support of its claims that CertainTeed's use is generic, Boise points to the alleged widespread use of the term in its generic sense by third parties in the construction industry. Def.'s Brief at 14. Boise states that "numerous other entities within the construction and building industry used the term alone and in conjunction with other words." *Id.* Boise also contends that

---

consuming public is the product or service or a particular product source or service. It is not necessary that the consumer be able to identify the source. For trademark purposes, it is only significant that the consumer is able to recognize that the product comes from a particular source, known or unknown. If the relevant consuming public understands that the term is identifying a thing, rather than functioning as a brand name by identifying its source, the term is generic. *Id.* at 301.

The test of consumer understanding relies on consumer surveys to determine whether consumers think the term represents 'the generic name of the product [or service] or a mark indicating merely one source of that product [or service].'" *Dranoff-Perlstein,* 967 F.2d at 859. "It is the use and understanding of the term in the context of purchasing decisions . . . that determines the primary significance of a designation." Restatement (Third) of Unfair Competition § 15, comment c (1995). To determine whether a word is generic, courts also ask whether commonly used alternatives are available. "If no commonly used alternative effectively communicates the same functional information, the term that denotes the product [or service] is generic." *Id.* The inverse is not necessarily true: "[T]he existence of synonyms for a term does not mean the term is not generic. There may be more than one term which the consuming public understands as designating a category of goods."

there is strong evidence of genericness because the plaintiff has failed to contest such third-party

use. *Id.* at 14. According to Boise, William O'Connor, CertainTeed's own branding expert,

admitted that CertainTeed often uses the term in a generic sense. *Id.*

      Plaintiff argues that the term "Building Solutions" cannot be generic because its primary

reference in the minds of the relevant consuming public is not to the product category or genus of

the product at issue (i.e. its marketing program or its education program for architects). Pl.'s

Opposition at 15. Boise does not directly address this contention. There is no suggestion in

defendant's motion of any evidence as to how the relevant public perceives the term in connection

with plaintiff's program or any evidence from a linguistics expert on the meaning of the term.

Instead, Boise concedes that "'Building Solutions' may not be generic for the services specified in

CertainTeed's '753 trademark registration (i.e., 'preparation of customized marketing materials'

and 'analysis of electrical energy needs')" Def.'s Brief at 16.

      For purposes of its summary judgment motion, Boise has not presented evidence sufficient

as a matter of law to overcome the presumption that the term as plaintiff uses it is not generic. *Id.*

The facts as presented by both parties could lead a rational fact-finder to conclude that the term

"Building Solutions" as CertainTeed uses it is or is not generic. Therefore, there is a genuine issue

for trial. Accordingly, I will deny defendant's motion for summary judgment in so far as Boise

claims that plaintiff's mark as plaintiff uses it is generic.

**B.**    **Whether defendant's use of the term "Building Solutions" is generic**

      Next, Boise argues that it is entitled to summary judgment because Boise itself is using the

phrase "Building Solutions" in its generic sense to refer to products and services that meet

building problems or challenges. Def.'s Brief at 14.[11] Boise argues that *its own* use of the term is

generic and that the plaintiff cannot prevent defendant from making use of "Building Solutions" in

its generic sense. Def.'s Brief at 16. Boise states that the term "'Building Solutions' has a generic

meaning as a matter of law, *at least when it is used to refer to building products and services,*"

which is how Boise uses the term. *Id.* (emphasis added). Boise argues that "to the extent plaintiff

has any valid trademark rights, those rights are for non-generic use of the term Building

Solutions." *Id.* at 2.[12]

---

[11] Boise later argues that CertainTeed's mark is not legally protectable because it is not
inherently distinctive, and is at most descriptive but has not acquired secondary meaning. I
address these arguments as part of Boise's likelihood of confusion analysis.

[12] In making this argument, Boise relies on a legal theory articulated by McCarthy to argue
that its own use is permitted because its use is generic, and therefore, this court need not even
address the validity of plaintiff's mark. McCarthy §§ 12:3; 12:23. McCarthy notes that support for
this theory lies in the fact that a term may be both generic and act as a brand name depending
upon its use and the context. *Id.* For example, DIESEL serves as a brand name for jeans and other
apparel; however, when used to refer to engines, the term is clearly generic. McCarthy § 12:3.
Boise uses the term "apple" as an example. "Apple" used to refer to a red delicious would be
generic; however, "Apple" as a name for a computer is protectable under trademark law. Def.'s
Brief at 14.
    McCarthy notes that the Second Circuit has applied this principle to find that the word
"safari" is generic as applied to hats, jackets, and expeditions into the African wilderness, but
protectable as a trademark as applied to shorts, scarves, portable grills, and other items.
*Abercrombie & Fitch Co.*, 537 F.2d 4, 11-14 (2d Cir. 1976). Pointing to the Second Circuit's
application of this principle, McCarthy observes that "[b]ecause a term may be the generic name
of one product, but not of another, some cases can be decided on the ground that the defendant's
use is permitted because the contested term is a generic name of the *defendant's* goods, without
the court having to pass on the validity of the mark and its genericness as to the plaintiff's goods."
McCarthy §§ 12:3; 12:23 (emphasis added) (noting that in the *Genesee Brewing Co.* case the
Second Circuit held that the owner of the mark "Honey Brown" for lager could not prevent
another from using the term "Honey Brown" on ales because the term was the generic name of a
type of ale and, therefore, defendant was entitled to use it as a generic name of its product.) In
*Genesee Brewing*, the Second Circuit stated: "It is enough to hold that since the words 'Honey
Brown' are generic as applied to *defendant's* product, the defendant has a right to use them and
the plaintiff cannot recover for trademark infringement." *Genesee Brewing Co. v. Stroh Brewing
Co.*, 124 F.3d 137 (2d Cir. 1997) (emphasis added). The Third Circuit has not applied the

In support of its claims that its use of the term is generic, Boise claims that plaintiff's branding expert conceded that the term *could* be used in a generic sense. Def.'s Brief at 16-17. Boise also points to third-party uses of the term in the construction industry. *Id*. at 14. Boise contends that based on this evidence the term is generic for solving building problems and challenges.[13]

Boise asks that I find the term "Building Solutions," as it is used by Boise, as a generic name for its goods and services. While the term "Building Solutions" could well be generic as defendant uses it, it is not generic as a matter of law. Boise has not shown that its use of the term is generic as a matter of law. The question of whether defendant's use of the term "Building Solutions" is generic is a genuine issue of material fact that must be decided by the fact-finder. Examining the facts on record, a rational fact-finder could conclude that the term "Building Solutions" as it is used by Boise is not generic. Thus, I will deny defendant's motion for summary judgment in so far as defendant argues that defendant's use is generic as a matter of law.

**C.    Whether Boise is making fair use of the term "Building Solutions"**

Next Boise argues that its use of the term "Building Solutions" is fair use as a matter of law. Def.'s Brief at 13. Boise evokes the fair use defense under 15 U.S.C. § 1115(b)(4), which provides that a defendant may assert the fair use defense when the allegedly infringing term is

---

principle proposed by Boise, at least in the context of evaluating genericism. Instead, it seems that Boise's argument, couched in terms of genericism, is essentially a fair use argument, an issue I address in the next section.

    [13] CertainTeed does not address defendant's argument that Boise's own use is generic because it argues that under the fair use analysis (discussed *infra*) that Boise is using the term as a mark, rather than as a descriptive term.

used fairly and in good faith only to describe to users the goods or services of a party or their geographic origin." *Id*. at 16.[14]

Under the fair use doctrine, "[a] junior user is always entitled to use a descriptive term in good faith in its primary, descriptive sense other than as a trademark." McCarthy § 11:45; *Barton et al. v. Rex-Oil Co.*, 2 F.2d 402 (3d Cir. 1924); *Fawcett Publications, Inc. v. Popular Mechanics Co.*, 80 F.2d 194 (3d Cir. 1935); *Q-Tips, Inc. v. Johnson & Johnson*, 206 F.2d 144 (3d Cir. 1953). However, defendant's use of the contested term must not cause confusion: "If, with all the words of the English language at its disposal, [the defendant] should adhere to the [contested] words . . . as the name of its product, it must unmistakably distinguish the name of its product from the name of the complainants' product [or service]." *Barton*, 2 F.2d at 407. "While defendant may use the descriptive word . . . , it must do so in such a manner as will distinguish it from plaintiff's [product or service] and thus prevent deception to the purchasing public." *Fawcett Publications*, 80 F.2d at 199.

---

[14] Section 1115(b) of the Lanham Act states:
If the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be conclusive evidence of the registrant's exclusive right to use the registered mark in commerce . . . except when one of the following defenses or defects are established:
    . . .
    (4) That the use of the name term, or devise charged to be an infringement is a use, otherwise than as a trade or service mark, . . . of a term or devise which is descriptive of and used fairly and in good faith only to describe to users the goods or services of such party . . .
15 U.S.C. § 1115(b).

The 1988 amendments to the Lanham Act permit a defendant who is sued for infringement of either a contestable or incontestable registration to assert any of the defenses listed in § 1115(b). McCarthy § 11:49; 15 U.S.C. § 1115(a).

To demonstrate fair use, a defendant is required to prove that it 1) used the contested term merely to describe its product; 2) did not use the term as a trademark; and 3) used the term in good faith. *Information Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1008 (3d Cir. 1991).[15]

Boise contends that to the extent the term is descriptive as used by Boise, then Boise's use is fair use as a matter of law. With respect to the first factor, Boise argues that the term "Building Solutions" is a concise description of its business and the nature of its goods and services. Def.'s Brief at 17. Boise argues that the word "building" denotes the nature of the goods— those related to the construction or building industry, and that the word "solutions" communicates that Boise is a source for answers or resolutions. *Id.* at 19. Together, the words communicate that Boise is in

---

[15] The Third Circuit has found that before deciding whether defendants may avail themselves of the fair use defense, it is proper for the district court to determine whether *plaintiff's* mark is descriptive. *Institute for Scientific Information Inc. v. Gordon & Breach, Science Publishers, Inc.*, 931 F.2d 1002, 1010 (3d Cir. 1991)(stating "the district court determined that [the contested term] was 'clearly descriptive' [of plaintiff's product] as this was necessary before deciding whether defendants could avail themselves of the fair use defense"). However, there is some doubt as to whether this rule applies to the present case because the Third Circuit itself noted in *Gordon & Breach* that the disposition of plaintiff's appeal did not actually require the court to reach this conclusion, but that it made this determination because it believed the legal issue would arise on remand. *Id.* Furthermore, the authority relied on in that case supports the approach that it is the *defendant's* use, not the plaintiff's, that must be descriptive for the fair use defense to apply. *Id.* (citing *Ringling Bro.-Barnum & Bailey v. Celozzi-Ettelson Chevrolet*, 855 F.2d 480 (7th Cir. 1988); and McCarthy § 11:45).

Applying the Third Circuit's ruling, I find that plaintiff is using the term "Building Solutions" at most descriptively (if not generically), to characterize the products and services it provides through its marketing program. "A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods." *Checkpoint Systems, Inc.,* 269 F.3d at 282. If the term "requires imagination, thought or perception to reach a conclusion as to the nature of the goods," the term is suggestive. *Id.* It requires no stretch of the imagination to conclude that CertainTeed is providing solutions for the building industry, in the form of building materials and consulting; therefore, the term is not suggestive as a matter of law, and, at most, a reasonable fact-finder could find that the term is descriptive.

the business of supplying solutions for problems arising in the construction business. *Id*. Boise contends that it has the right to use the term in a fair manner to describe the fact that its business is providing solutions to building problems and challenges.

Plaintiff contends that Boise's use is not fair use because it is using the term as a mark or in a manner analogous to trademark use. That is, plaintiff contends Boise is using the term to capture attention, to identify and distinguish its services and products from those of others, and to drive the sale of its products. In order to avail itself of the fair use defense, the defendant must use the "words not as a trade-mark but only descriptively." *Q-Tips*, 206 F.2d at 148. "The physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks is also relevant to the fairness of the use." *Restatement (Third) of Unfair Competition* § 28, comment c (1995). "It is not a trademark infringement to use words in their ordinary, rather than in their special trademark, meaning." *Louis Rich, Inc. v. Horace W. Longacre, Inc.*, 423 F. Supp. 1327 (E.D.Pa. 1976).[16]

CertainTeed contends that Boise cannot successfully raise the fair use defense because the term is not being used by Boise in its everyday sense because Boise is using the term as a mark, to identify and distinguish its goods and services. Pl.'s Opposition at 21. In support of this assertion, CertainTeed observes that Boise uses the term to attract attention. *Id*. at 22. CertainTeed avers that the phrase "Boise Building Solutions" is set off from other text and stands alone in

---

[16] The Third Circuit has found that defendants may use descriptive words that others may have trademarked but that they "must do so in such manner as will distinguish it from plaintiff's [product] and thus prevent deception to the purchasing public." *Fawcett Publications*, 80 F.2d 194. Boise maintains that using the name Boise with the contested term eliminates confusion; however, the parties dispute whether Boise always uses the term Boise in association with the term "Building Solutions." Pl.'s Response ¶ 27.

advertisements. *Id.* at 22-23. CertainTeed notes that its catchy alliteration signals that Boise is using the term as a mark, rather than as a descriptive term. *Id.* CertainTeed also asserts that Boise has made use of the term "Building Solutions" as part of a domain name. *Id.* at 6; Compl. ¶ 21, Exhibit E (showing registrations for www.boisebuildingsolutions.com, -.net, and -.org).[17] Accepting all of plaintiff's assertions as true, as I must on defendant's motion for summary judgment, I find that a reasonable fact-finder could conclude that Boise is using the term as a mark, rather than in an ordinary descriptive sense. Thus, I will not grant Boise's motion for summary judgment on the grounds of the fair use defense.

Finally, CertainTeed also alleges facts sufficient for purposes of overcoming a summary judgment motion to show that Boise did not act in good faith. Pl.'s Opposition at 13-14. CertainTeed contends that Boise initially failed to conduct a trademark search and later ignored the results of a search it commissioned after learning of plaintiff's rights and proceeded with its plan to use the contested term. *Id.* at 2, 13-14. CertainTeed also maintains that "notwithstanding its awareness of CertainTeed's trademark rights, Boise conducted no reasonable investigation into the nature and extent of CertainTeed's use, nor into the nature and extent of any third-party uses of the term." Pl.'s Opposition at 5, 6. Plaintiff avers that Boise failed to conduct a reasonable investigation into the nature and extent of plaintiff's use even after receiving plaintiff's objections. *Id.* Because the fair use defense applies only when the defendant uses the term in good faith, I find that there is a genuine issue of material fact as to whether Boise acted in good faith. Therefore, I

---

[17] The Second Circuit has held that any use of a word as a domain name is use as a "mark" and is not eligible for the fair use defense. *TCPIP Holding Co. v. Haar Communications, Inc.* 244 F.3d 88 (2d Cir. 2001) (applying the rule even to those for which defendant had no active website).

will deny defendant's summary judgment motion in so far as defendant claims that its own use of the term "Building Solutions" was fair use.

## D. Whether there is Likelihood of Confusion

Finally, Boise moves for summary judgment on the grounds that there is no likelihood of confusion. Def.'s Brief at 19. Boise claims that its use of the term "Building Solutions" does not constitute an infringement of CertainTeed's rights in its "Building Solutions" mark (registration no. 2,390,753) because CertainTeed has not shown that its mark is protectable.

As explained above, to show trademark infringement under the Lanham Act, a plaintiff must first prove that the mark in question is valid and legally protectable. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991). An incontestable mark is legally protectable. For a contestable mark to be legally protectable, the mark must either be arbitrary, fanciful or suggestive so that it is inherently distinctive or, if the mark is descriptive, it must have acquired secondary meaning. *Id.* at 291-92. Inherently distinctive marks are never descriptive; they are either arbitrary, fanciful or suggestive. *Ford Motor Co.*, 930 F.2d at 292 n. 18.

Boise argues that the CertainTeed's mark has not attained incontestable status. Boise also argues that because the mark is not inherently distinctive and has not acquired secondary meaning CertainTeed cannot claim likelihood of confusion. Def.'s Brief at 21-22.

The parties do not dispute that CertainTeed's "Building Solutions" mark (registration no. 2,390,753) has not achieved incontestable status. CertainTeed has not averred incontestable status for this particular mark, registered October 3, 2000. Furthermore, there is no evidence on the record that CertainTeed complied with the statutory formalities necessary to obtain such status.

Compl. ¶ 13; Pl.'s Response ¶ 16; Pl.'s Opposition at 10.

Instead, the parties dispute whether the mark is inherently distinctive. CertainTeed claims that its mark is inherently distinctive because it is suggestive, whereas Boise contends that the mark is either generic or descriptive. Boise argues that the widespread use of the phrase throughout the construction industry shows that the mark is not inherently distinctive. Def.'s Brief at 22.

I find that CertainTeed has not presented sufficient evidence such that a reasonable fact-finder could determine that CertainTeed's mark is suggestive and therefore inherently distinctive. Suggestive marks are "virtually indistinguishable from arbitrary marks" and require "imagination, thought or perception to reach a conclusion as to the nature of the goods." McCarthy § 11:4; *Checkpoint Systems, Inc.,* 269 F.3d at 282. CertainTeed does not explain how imagination is required to understand the mark as it relates to its marketing program and the products provided through that program, and I can discern no basis in the evidence for such an argument. Furthermore, descriptive terms "convey an immediate idea of the ingredients, qualities or characteristics of the goods [or services]." *Id.* Courts also infer descriptiveness where there is use by competitors and there is a need for competitors to use the term. McCarthy § 11:69. "If . . . the message conveyed by the mark about the goods or services is so direct and clear that competing sellers would be likely to need to use the term in describing or advertising their goods, then this indicates that the mark is descriptive." McCarthy §11:68. Boise contends that competitors need the term to describe their products and presents substantial evidence that competitors have used

this term for that very purpose.[18] CertainTeed has failed to present evidence such that a

---

[18] Boise argues that the "widespread use of the term 'Building Solutions' in the construction industry" establishes that the term is generic when used to refer to products and services that meet building problems or challenges. Def.'s Brief at 14. In support of its assertion, Boise points to a number of third-party uses of the term Building Solutions, all within the context of the construction and building industry. "Building Solutions" used in California and Texas since 1984 in connection with building and remodeling services (Exhibit 25, Oiring Dep. at 9-13, 17-19, 27-28, 46-47); "Metal Building Solutions," "Building Solutions" and "Building . . . Solutions" all used in Maine since February 1992 in connection with design/build services (Exhibit 31, Stegal Dep. at 6-7, 8-9, 18-20, 96-98, 106); "Building Solutions Unlimited" used in Michigan since 1994 (Exhibit 16, Goetz Dep. at 43, 47-48); "Building Solutions" used in New Jersey since November 1989 in connection with general contracting and remodeling services (Exhibit 9, Berke Dep. at 5, 48-49, 72); "Building Solutions" and "Building Solutions of New Bern" used since September 1990 in connection with building, remodeling, and historic restoration services (Exhibit 21, Lessard Dep. at 8-10, 12-13, 36-39); "NuTone Building Solutions" and "Building Solutions for Today's Lifestyles" used nationwide since 1995 in connection with the sale and distribution of building products and related services (Exhibit 28, Reick-Mitrisin Dep. at 22-23, 43, 45, 55-56, 84, 85); "Carolina Building Solutions" used in the Carolinas, Virginia, West Virginia, and Tennessee in connection with the manufacture and sale of modular manufactured housing (Exhibit 20, Kifer Dep. at 10-13, 47-48, 75-76, 78-79); "CM Building Solutions" in connection with construction management and contracting services (Exhibit 10, Calderwood Dep. at 9-10); "Total Building Solutions" in connection with design/build services (Exhibit 27, Parkins Dep. at 11); "JT Building Solutions" since 1995 (Exhibit 22, Miller Dep. at 55-56); "Building Solutions" since February 1997 (Exhibit 13, Cowell Dep. at 10, 45); and "Building Solutions" used since March 1994 in connection with concrete treatment products and services, and other building products (Exhibit 17, Hammond Dep. at 7-8, 60-62, 63-71).

In addition, Boise notes that "Building Integrated Solutions" is a federally registered trademark, used in Minnesota, Iowa, Wisconsin and Ohio in connection with design and installation of HVAC, electrical, mechanical and sensing systems (Exhibit 18, Hofstrand Dep. at 18, 36-37, 46-47, 56). Boise notes that in 1997, CertainTeed offered to purchase ownership rights in the name Building Solutions. Defendant's Statement of Material Facts at 11 n. 9 (citing Exhibit 9, Burke Dep. at 58-63; Exhibit 25, Oiring Dep. at 73-85). Boise also points out that these uses have occurred in the past five years, some dating back to the 1980s and early 1990s, and that use of the term "Building Solutions" "has extended to all regions of the United States." *Id.* at 12.

CertainTeed has not contested that these uses actually exist. Instead, CertainTeed states that it "maintains a vigorous policing effort against third-party infringers of the trademark." Pl.'s Response ¶ 20. CertainTeed also avers that "the examples presented by Boise are few in number, make no significant use of the mark, are small, regional users or provide products that do not compete in the same market as CertainTeed." *Id.* CertainTeed argues that "nearly all of the third-party use identified by Boise dates post-1966 and is de minimis." *Id.* ¶ 21. CertainTeed also contends that "any relevant use is recent and/or insignificant and isolated," and the "third parties identified by Boise make very little use of the mark and are geographically isolated." *Id.* ¶¶ 22, 23.

reasonable fact-finder could conclude that the term is suggestive and therefore inherently distinctive. It is, at most, descriptive.

Because its mark is not inherently distinctive, CertainTeed must rely on a showing that its mark has acquired secondary meaning to make it legally protectable. A term that is not inherently distinctive is not protected unless the term has acquired secondary meaning. *Two Pesos, Inc. v. Taco Cabana, Inc*., 505 U.S. 763, 769 (1992); *Duraco Prods. v. Joy Plastic Enters.,*40 F.3d 1431, 1440 (3d Cir. 1994). "Secondary meaning is demonstrated where in the minds of the public, the primary significance of a . . . term is to identify the source of the product itself." *Ford Motor Co.*, 930 F.2d at 292 (citations omitted). "A non-exclusive list of factors which may be considered includes the extent of sales and advertising leading to buyer association, length of use, exclusivity of use, the fact of copying, customer surveys, customer testimony, the use of the mark in trade journals, the size of the company, the number of sales, the number of customers, and actual confusion." *Ford Motor Co.*, 930 F.2d at 292.

I conclude that CertainTeed has not presented evidence such that a reasonable fact-finder could determine that the term has acquired secondary meaning. CertainTeed avers that since 1996, it spent approximately $30 million promoting its marketing program; however, it offers no evidence that its use was exclusive or that the relevant purchasing public has come to associate the term "Building Solutions" with CertainTeed. In fact, Boise presents evidence that in a survey of builders and architects, not a single person spontaneously associated the term with CertainTeed. Def.'s Brief at 22 (citing Weilbacher expert report). Boise also presents evidence of third-party uses of similar marks. *Id*. In light of this evidence and plaintiff's failure to present evidence that might show how the term has acquired secondary meaning, no reasonable fact-

21

finder could conclude that the term "Building Solutions" has acquired secondary meaning.

Because CertainTeed's "Building Solutions" mark is contestable and because CertainTeed has not established that its mark is inherently distinctive or that it has acquired secondary meaning, CertainTeed has not presented evidence such that a reasonable fact-finder could conclude that the mark is legally protectable. Therefore, I will grant summary judgment in favor of the defendant as to the "Building Solutions" mark (registration no. 2,390,753).

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CERTAINTEED CORPORATION,<br>Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | CIVIL ACTION |
| | : | |
| BOISE CASCADE CORPORATION,<br>Defendant. | : | NO. 02-2677 |
| | : | |
| | : | |
| | : | |

# Order

And now, this ____ day of April 2004, upon consideration of defendant's motion for summary judgment (Doc. # 38), plaintiff's response, defendant's reply, and plaintiff's letter of August 11, 2003, it is hereby ORDERED that:

1) Defendant's motion for summary judgment is GRANTED as to the registered mark no. 2,390,753, and judgment is entered in favor of defendant Boise and against plaintiff CertainTeed as to that mark.

2) Defendant's motion for summary judgment is DENIED as to the registered mark no. 1,823,200.

3) Trial is scheduled for June 21, 2004 at 10 a.m.

_____

William H. Yohn, Jr., Judge

23